DANIEL NORTH

v.

THE PEOPLE OF THE STATE OF ILLINOIS.

139  81
174  616

139  81
84a 510

139    81
109a² 1219

*Filed at Ottawa October 31, 1891.*

1. MURDER—*allegations of indictment—official character of deceased.* In an indictment for murder it is only necessary to allege the killing of a human being in the peace of the people. The official character of the person killed does not aggravate or modify the crime, and it only becomes pertinent incidentally, in determining the legal relations and duties of the person killing and the person killed, with respect to each other, and thus characterizing their acts at the time of the killing.

2. On the trial of one for murder, evidence of the official character of the person killed, and of the capacity in which he was acting, may be admitted without any allegation of that fact in the indictment.

3. SAME—*evidence of self-defense—and reducing the homicide to manslaughter.* On the trial of one for the murder of a city marshal, the testimony of an absent witness that the deceased, at the time he was shot assaulted and beat the defendant over the head with his "billy" before the latter fired the fatal shot, is material for the defense, whether the deceased was justified in arresting the defendant or not. Such evidence tends not only to reduce the homicide from murder to manslaughter, but also to prove that the defendant fired such shot in necessary self-defense, though not necessarily conclusive for either purpose.

4. CONTINUANCE—*sufficiency of affidavit.* Where an affidavit for a continuance in a capital case shows that there will be a conflict in the evidence as to a material fact expected to be proved by an absent witness, the failure to allege that defendant knows of no other witness by whom to prove such fact is not a fatal objection, as the testimony of the absent witness might alone raise a reasonable doubt in behalf of the defendant as to such question of fact.

5. An affidavit for a continuance in a criminal case, after alleging the absence of a witness, and what the defendant expected to prove by such witness, stated that affiant was much intoxicated at the time of the difficulty, and was so dazed by blows he received from the person who was killed, that he had little or no recollection of what subsequently occurred, and that he believed the facts to be true which he expected to prove: *Held,* the affidavit, though not directly stating the absent evidence was true, was sufficient to meet the requirements of the law.

6—139 ILL.

6. SAME—*diligence required.* A defendant in a criminal case is not required to show the same degree of promptness and diligence in preparing for trial at the term at which the indictment is found as at subsequent terms, in order to entitle him to a continuance.

7. SAME—*prior engagements of attorney as grounds for.* Attorneys appointed by the court to defend one charged with crime should act as his counsel and manage his case, but they are not required, nor will they be permitted, to neglect the business of clients by whom they had been previously retained in order that they may properly defend him. They should be allowed a reasonable time after discharging their prior duties to prepare the defendant's case for trial, and thus prevent injustice being done to him.

8. The statute requiring the court to assign competent counsel to one charged with crime who is unable to employ one, to conduct the defense, is not intended to be a mere empty formality, and the counsel thus appointed should not be compelled to act without being allowed reasonable time within which to understand the case and prepare the defense. It makes no difference in this respect that the accused had made a previous conditional contract of retainer with the same counsel, which failed because the fee was not paid or secured. Such counsel, before their appointment by the court, are not required to take any steps in the case until the conditions of their employment are complied with.

9. DYING DECLARATIONS — *preliminary examination in presence of jury.* Where dying declarations are properly admissible, there will be no substantial error in permitting the preliminary evidence to be given in the presence of the jury. It is to avoid the possibility that the declarations may not be proper evidence that the jury should be withdrawn while the court hears the preliminary proof. When such dying declarations are admitted, the jury will be entitled to hear preliminary evidence showing their admissibility.

10. SAME — *presence of State's attorney.* The fact that the State's attorney was present at the time the deceased made his statements, while no one was present to represent the accused, and that the declarations consisted largely, if not entirely, of answers made to the questions of the State's attorney, and the fact that the declarant died within an hour after his statements were made, and that there may have been contradiction or some obscurity in such statements, are matters affecting their weight and effect as evidence, rather than their competency.

11. SAME—*belief in certainty of death—church tenets.* The tenets of the church to which the declarant belonged, that there may be repentance at any moment before death, are not a proper subject of inquiry on the question of the admissibility of his dying declarations, but what he was justified in believing and did believe in regard to the certainty and nearness of death.

12. SAME—*when admissible.* To render dying declarations admissible in evidence it is not enough that the party shall think that he will never recover, but the declaration must be made under the impression of almost immediate dissolution.

13. Dying declarations are only admissible in evidence where the death of the deceased is the subject of the charge, and the circumstances of the death are the subject of the dying declarations. Declarations of what a third person had told the declarant, and of the fact that he had carried a warrant for the defendant at a former time, are not admissible.

14. EVIDENCE—*self-serving declarations—res gestæ.* Evidence of a conversation with a prisoner, had some time after he shot an officer attempting to arrest him, which is in no correct sense a part of the transaction or a contemporaneous explanation of it, is not admissible on the part of the defendant, on trial for murder, as part of the *res gestæ*, to show the condition of his mind.

15. SAME—*admitting after closing case—discretion of court.* On the trial of a defendant for the murder of one while the latter was acting as city marshal, when the fatal wound was given, and after the evidence was closed, and during the last argument of defendant's counsel to the jury, the court allowed the prosecution to give in evidence an ordinance of a city creating the office of marshal. It did not appear that defendant's counsel were denied the right to introduce countervailing evidence, or that they were limited in their argument thereafter to the jury in respect to the effect of such new evidence : *Held,* that there was no abuse of discretion by the court in admitting the new evidence.

16. VOLUNTARY INTOXICATION—*no excuse for crime—question of fact for jury.* On the trial of one for murder in shooting a police officer, the court properly instructed the jury that voluntary intoxication was no excuse for the commission of crime, but by the next instruction proceeded to state that if certain facts were proved with regard to the intoxication of the defendant at the time he shot the officer, then he was guilty, notwithstanding such intoxication,—or, in other words, that such intoxication was voluntary : *Held,* that the last instruction was erroneous, in determining an inference of fact for the jury.

17. The court is not at liberty to draw inferences of fact for the jury as to the probative force of testimony. It is not the province of the court to tell the jury that if certain facts in regard to intoxication are proved the defendant is guilty, because this is to determine for the jury that those facts prove that the intoxication is voluntary.

18. The legal effect of voluntary intoxication upon a criminal act is a question of law; but whether in a given case intoxication is voluntary or involuntary is always a question of fact.

19. Self-defense—*what constitutes, question of fact.* On a trial for murder, in which self-defense was set up, the court instructed the jury that if certain facts were proved the defendant did not act in self-defense: *Held,* purely an inference from facts, and was erroneous. What constitutes self-defense is a conclusion of fact.

20. Arrest without warrant—*section 6, article 2 of the constitution.* Section 6 of article 2 of the constitution, which provides that "no warrant shall issue without probable cause, supported by affidavit particularly describing the place to be searched and the person or thing to be seized," has application only to warrants, and does not abridge the right to arrest without warrant in cases where such arrest could be lawfully made at common law, before the adoption of the present constitution.

21. It is within the principles of the common law, in force in this State at the time of the adoption of section 6 of article 2 of the constitution, to allow arrests to be made by sheriffs, constables, and other like officers, for such misdemeanors committed in their presence as can not be stopped or redressed except by immediate arrest.

22. The offense of carrying concealed weapons, when not done for an innocent purpose, is a continuing one; and when committed in the presence of a police officer, the offense is such as to make it necessary to arrest the offender immediately, without a warrant, to prevent the apprehended dangerous consequences.

23. The guaranty of the constitution in regard to search warrants applies only to cases where the purpose of obtaining the warrant is to make a search for goods. It has no application to arrests for particular offenses, consisting wholly or in part in having particular property in possession, nor to the seizure of dangerous weapons in the possession of the party arrested. In such cases the right of seizure is incidental to the right to arrest.

24. Arrest—*force justifiable in making.* A city marshal or police officer, in attempting to arrest one for carrying a concealed weapon, is not justified in beating the party over the head with a "billy," merely because the latter refuses to halt and surrender his weapon.

25. List of jurors—*when to be furnished to the accused.* The statute only requires a list of jurors to be furnished to a party indicted, previous to his arraignment,—and this means the list of jurors then selected to serve immediately after arraignment, for otherwise, as in case of continuance, it would be impossible to comply with the statute. When the accused is ready for trial he will be furnished by the clerk with a list of jurors then selected, if he shall request it.

26. Jury—*who may serve—second term.* Where the time arrives for the service of a second jury, and some of those drawn and summoned are absent, their places may be filled by others, and no reason is per-

ceived why a person who has previously served during the same term may not be selected for that purpose.

27. OFFICER DE FACTO—*office de jure.* The doctrine that there can not be a *de facto* officer where there is not an office *de jure,* has no application to a case where a city council is authorized by statute to create an office, and a person is found exercising the functions and duties of such office. In such case it will be presumed that the person so acting in a public capacity is duly authorized, until the contrary is shown ; and it is not material how the question arises,—whether in a civil or criminal case,—nor whether the officer is or is not a party to the record, unless, being plaintiff, he unnecessarily avers title to the office.

28. Where there is power to create and fill a particular office, evidence that a person acted as such officer is, in cases like this, conclusive, as well of the creation of the office as of the election or appointment of the person to fill it.

WRIT OF ERROR to the Circuit Court of Livingston county ; the Hon. ALFRED SAMPLE, Judge, presiding.

Messrs. STRAWN & NORTON, for the plaintiff in error :

Plaintiff was not granted reasonably lawful time to prepare his defense.

The court erred in overruling the challenge to the array of jurors. Starr & Curtis' Stat. p. 1519, chap. 78, sec. 8.

A defendant should be furnished with a list of jurors in time to enable him to investigate their character and antecedents. This is of no use if given when the trial has commenced.

Evidence of the official character of Hodge was improperly admitted, as that was not averred in the indictment. If proof of his official character was proper, it should have been such as to show him a *de jure* officer. As to proof of official character, see *People* v. *Hopsen,* 1 Denio, 574; *Commonwealth* v. *Dugan,* 12 Metc. 233 ; *Rex* v. *Gordon,* 1 Leach, 515 ; 1 East's P. C. 312 ; *United States* v. *Wood,* Gallis, 361 ; *Muir* v. *State,* 8 Blackf. 154 ; *Bell* v. *Tooley,* 11 Ind. 605 ; *Regina* v. *Newton,* 1 C. & K. 469 ; *State* v. *Boies,* 34 Me. 235 ; *People* v. *Cook,* 4 Seld. 67.

Parol evidence of official character was improper. *People* v. *Nostrand,* 46 N. Y. 375.

There can be no officer *de facto* without there being such an office *de jure.* There was no proof that there was such an office.

The alleged dying declarations were improperly admitted in evidence, and the preliminary evidence should not have been given in the hearing of the jury. *Starkey* v. *People,* 17 Ill. 24; *Hill's case,* 2 Gratt. 611; *Smith* v. *State,* 9 Humph. 17.

The rule is universal, that the proof of such a declaration must be strictly confined to the fact of the killing, and the circumstances immediately connected with it. 1 Greenleaf on Evidence, sec. 156; *Liber* v. *Commonwealth,* 9 Barb. 11; *State* v. *Moses,* 35 Ala. 421; *Johnson* v. *State,* 17 id. 618; *Ben* v. *State,* 37 id. 103; *State* v. *Shelton,* 2 Jones, 360; *Nelson* v. *State,* 7 Humph. 542; *Hackett* v. *People,* 54 Barb. 370.

The conversation of the defendant with Ament a few minutes after the shooting was a part of the *res gestæ,* and it was errror. to refuse to admit the same. The following cases illustrate the principle: *King* v. *Foster,* 6 C. & P. 325; *Insurance Co.* v. *Moseley,* 8 Wall. 405; *Commonwealth* v. *McPike,* 3 Cush. 181; *Sherley* v. *Billings,* 8 Bush, 147; *Castner* v. *Sliker,* 33 N. J. L. 95; 1 Greenleaf on Evidence, sec. 108; *Railway Co.* v. *Howard,* 6 Bradw. 569; *Commonwealth* v. *Hackett,* 2 Allen, 136; *Elkins* v. *McKean,* 79 Pa. St. 493; *Entwhistle* v. *Feigner,* 60 Mo. 214; *Harriman* v. *Stowe,* 57 id. 93; *Brownell* v. *Railway Co.* 47 id. 239.

The court erred in excluding the evidence of the tenets of the Catholic church, to which the deceased belonged, that a man may repent at any time before death. 1 Phillips on Evidence, 235; Roscoe on Crim. Evidence, 29-31; 2 Starkie on Evidence, 262; 1 Chitty on Crim. Law, 569; 2 Russell on Crimes, 684; 1 Greenleaf on Evidence, 156, 158; Swift on Evidence, 124; McNally on Evidence, 384; Wharton on Crim. Law, 308; *Montgomery* v. *State,* 11 Ohio, 424; *State* v. *Moody,* 2 Hayw. 189; *Smith* v. *State,* 9 Humph. 17; *Nelson* v. *State,*

7 id. 583; *Rex* v. *Van Butchell,* 3 C. & P. 495; *McDaniel* v. *State,* 8 S. & M. 415; *Hill's case,* 2 Gratt. 608; *Campbell* v. *State,* 11 Ga. 374; *People* v. *Knickerbocker,* 1 Park. Cr. 306; *People* v. *Green,* id. 11.

Erroneous instructions were given by the court, and proper instructions asked by the defendant were refused.

Mr. GEORGE HUNT, Attorney General, and Mr. H. H. McDOWELL, State's Attorney, for the People:

Want of time to prepare the defense is rarely, if ever, sufficient ground for a continuance. *Dunn* v. *People,* 109 Ill. 636.

The affidavit for a continuance fails to state that the "runner" was the only witness of what it is alleged he saw, nor does it state that he was the only person by whom such facts could be proved, or that said facts are true. *Dacey* v. *People,* 116 Ill. 567; *Wilhelm* v. *People,* 72 id. 471; *Eubanks* v. *People,* 41 id. 486; *Perteet* v. *People,* 70 id. 171.

No injury is shown to have been done the accused in overruling the challenge to the array of the jury. *Mapes* v. *People,* 69 Ill. 523; *Wilhelm* v. *People,* 72 id. 471.

The addition, the official character, or the fact that the person killed was a human being, need not be averred. *Boyd* v. *State,* 17 Ga. 194; 2 Bishop on Crim. Proc. sec. 506; *Wright* v. *State,* 18 Ga. 383; Wharton on Crim. Pl. and Pr. (9th ed.) sec. 109.

Hodge had the right to arrest the defendant without a warrant. Crim. Code, chap. 38, par. 401, sec. 4; Starr & Curtis, p. 24, art. 6, sec. 12.

A peace officer may arrest without a warrant when all the facts show that there was strong probable cause to believe the accused guilty. *Dodds* v. *Board,* 43 Ill. 95; *Marsh* v. *Smith,* 49 id. 397; *Cahill* v. *People,* 106 id. 621; *Mayo* v. *Wilson,* 1 N. H. 53; *Holly* v. *Mix,* 3 Wend. 350; Wharton on Crim. Pl. and Pr. secs. 8, 20; 1 Archbold on Crim. Pl. and Pr. (8th ed.) 92, and notes; Russell on Crimes, (8th ed.) *607.

. Under the law it is not necessary to produce any record or written evidence of the election, appointment or qualification of a constable or police officer, it being sufficient to prove that he was known to act as such officer, and upon this point we cite the following authorities: 2 Bishop on Crim. Pl. and Pr. secs. 824, 885; 1 id. sec. 1130; Wharton on Crim. Evidence, secs. 164, 833, 835; 1 Greenleaf on Evidence, sec. 92; *Commonwealth* v. *Kane,* 108 Mass. 473; *Commonwealth* v. *Tobin,* id. 426.

It is a matter of discretion with the court whether it will hear the preliminary evidence to introduce a dying declaration in the presence of the jury or not. 8 Am. and Eng. Ency. of Law, 128; *Sullivan* v. *Commonwealth,* 93 Pa. St. 284; *Dolls* v. *State,* 97 Ind. 555; *People* v. *Smith,* 104 N. Y. 491; *Bolin* v. *State,* 9 Lea, 516; *Murphy* v. *People,* 37 Ill. 455; *Leigh* v. *People,* 113 id. 372.

The fact that no objection was made to the preliminary evidence being given in the presence of the jury at the time it was heard, waived that objection, and it can not now be raised for the first time. *Moeck* v. *People,* 100 Ill. 244; *Bressler* v. *People,* 117 id. 444.

It is no objection to dying declarations that they were made in answer to leading questions, or obtained by pressing and warm solicitations. *Commonwealth* v. *Carey,* 11 Cush. 417; *Commonwealth* v. *Haney,* 127 Mass. 455; *Vass* v. *Commonwealth,* 3 Leigh, 786; *Ingram* v. *State,* 67 Ala. 67; *Jones* v. *State,* 71 Ind. 66; 1 Greenleaf on Evidence, sec. 159.

Because the court would not permit the sentences in brackets to be read to the jury, does not vitiate the whole declaration, nor render the residue incompetent. *Jones* v. *State,* 71 Ind. 66; *Moses* v. *State,* 35 Ala. 421; *West* v. *State,* 7 Texas App. 150.

. Only the substance of the declaration need be given, providing the declaration is complete in itself. *Montgomery* v. *State,* 11 Ohio, 424; *Ward* v. *State,* 8 Blackf. 101; *McLeon* v. *State,*

16 Ala. 672; *State* v. *Patterson*, 45 Vt. 308; *People* v. *Murphy*, 37 Ill. 447.

No set form of words is required in dying declarations, and the court must draw a rational conclusion, from all that was said, as to whether the declarant was in such a condition of mind as would render his declarations competent. *State* v. *Johnson*, 7 Am. Crim. 366; *Reynolds* v. *State*, 4 id. 153; *Payne* v. *State*, id. 155; *State* v. *Cantieny*, id. 419.

One indicted for murder can not give in evidence his own conversations had after going half a mile from the place of the murder, when he has had time to collect himself, to make out his case. Wharton on Crim. Evidence, sec. 691; *Shaw* v. *State*, 10 Texas App. 487; *Gardner* v. *People*, 3 Scam. 90; *Bennett* v. *People*, 96 Ill. 602; *Scaggs* v. *State*, 8 S. & M. 722; *Hall* v. *State*, 48 Ga, 607; *State* v. *Thomas*, 30 La. Ann. 600.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

At the October term, 1890, of the Livingston circuit court, the plaintiff in error, Daniel North, was convicted of the murder of William Hodge, and sentenced to suffer the extreme penalty of the law—death. Hodge was acting as city marshal of Pontiac, and it is claimed on behalf of the People that he was fatally shot by North while attempting to arrest him for carrying concealed weapons. It is not denied on behalf of North that he fatally shot Hodge, but it is claimed on his behalf that he did so while acting in his necessary self-defense, or, at least, that the conduct of Hodge, at and immediately before he thus shot, alone caused him to shoot, and that this conduct was a provocation apparently sufficient to make the passion irresistible, and so he is only guilty of manslaughter.

No witness who testified on the trial heard what was said between Hodge and North at and immediately before the time the fatal shot was fired. One witness only claimed to have observed the parties as they met. He thinks Hodge put his

hand on North's shoulder, and then, in about the time a pistol could be drawn, he heard a shot and saw smoke coming away from Hodge's clothing, and then both went in a ditch, soon after which another shot was fired. Other witnesses heard the shot, but saw nothing before, and then, just after the shot, observed Hodge strike North, from the effect of which North fell upon his hands and knees, and then another shot was fired. The evidence is that North fired both shots, and that Hodge used a policeman's "billy" in striking North, inflicting therewith a contused wound of about two inches in length, from which blood flowed. Hodge was mortally wounded by one of the shots, the attorneys for the People contending that it was the shot first fired, and the attorneys for North contending that it was that last fired. North was arrested at the time of the shooting and immediately placed in jail, where he has ever since remained. Hodge died from the effects of his wound a few minutes after twelve o'clock on the next day.

A dying declaration of Hodge, which shall be hereinafter considered, was read in evidence on the trial, and in it Hodge said that he arrested North, when he met him, for carrying concealed weapons, and requested North to surrender his pistol; that North told him to go away, and then shot, just as Hodge was reaching for North's pistol, and that it was that shot only which took effect.

The shooting occurred on the 21st day of July, 1890, and the first term of the circuit court to be held in Livingston county after that date was the October term, 1890, which convened on the 14th day of that month. On the 18th day of that month the grand jury returned an indictment against North for murder, and five days thereafter (on the 23d of the month) he was arraigned, and furnished with a copy of the indictment, with the names of witnesses endorsed on the indictment, and with a list of jurors.

On the 7th of November, 1890, the case was called for trial, and North then entered his motion to continue the cause, and

in support of his motion he read his own affidavit, in which
he stated, among other things, that he had been unable to
prepare his defense, by reason of being in jail, and of his hav-
ing no means wherewith to employ counsel; that he wished
Messrs. Strawn & Norton to defend him, and had a conditional
contract with them to that effect, but that they will do nothing
until the amount of their stipulated compensation is raised,
which he had been unable to have done; that he has had
communication with his father, who is now taking steps to
raise the requisite means as rapidly as possible, and that he
expects soon to have them, and he also read the affidavit of
one of the counsel named, in corroboration of his affidavit.
But the court overruled the motion, and thereupon Messrs.
Strawn & Norton, who had acted as counsel for North when
he was arraigned and in making this motion for continuance,
withdrew from the case and declined to voluntarily act further
as his counsel.  The court thereupon appointed Messrs. Strawn
& Norton as counsel to defend North, and also ordered the case
to be set down for hearing on the 17th of November.  There-
upon, on the last named date, North, by his counsel, applied
for a change of venue on account of the prejudice of the pre-
siding judge, which was allowed, and another judge was im-
mediately called in to preside, and did thereafter preside in the
court, and the cause was by that judge, so presiding, set down
for hearing on the next day,—the 18th of November.  On that
day North made a second application for a continuance of the
cause, and supported it by affidavit, as follows:

"Daniel North deposes that he has been in jail ever since
the time of the alleged homicide,—July 21, 1890; that he was
twenty-six years of age November 30, 1890, and is a farmer
and ditcher by occupation; that, as set forth in former affi-
davit, he has been unable to procure counsel to advise him as
to his rights, and unable, for want of means, to hunt up and
ascertain material witnesses in his behalf, and has been un-
able, for want of means, to have anything done in the prepa-

ration of his defense until November 7, 1890, when Strawn & Norton were appointed by the court to defend him; that since that time he and his said attorneys have worked diligently and industriously, as circumstances would permit, to ascertain the facts in the case, and learn the names and whereabouts of such persons as may have witnessed the facts and circumstances leading up to the alleged shooting, but they have been unable to be ready for trial at this time, as hereinafter shown; that, imprisoned, defendant has been able to do but very little to assist his attorneys in the premises; that he is informed and believes that the witnesses for the prosecution will fix the time of the alleged shooting at or between nine and ten o'clock in the forenoon of July 21, 1890, and the place as near the Smith House, in Pontiac, in a populous part and near the business center of the city, and defendant is sure and certain that some person or persons not yet known must have been eye-witnesses to the facts which led up to and caused the alleged shooting; that defendant had not the slightest intention of assaulting Hodge or other person, and did not do so except in his necessary self-defense; that though affiant was much intoxicated at the time, as shown in his affidavit of November 6, 1890, made part hereof by reference, he believes that Hodge came upon him in a very threatening manner and demanded defendant's revolver, and that he refused to give it to him, and defendant tried to go away from him, but Hodge followed him up and struck him several heavy blows on the head with a club or some other heavy weapon, and so dazed and stunned him that he has little or no knowledge of what subsequently occurred, except as he has it from hearsay; that since a knowledge of the facts as now claimed by the prosecution came to him since his imprisonment, he has diligently as his imprisonment would permit endeavored to ascertain the names of eye-witnesses of what occurred between defendant and Hodge leading up to the alleged shooting, and other facts and circumstances attending the same, but has been unable to do so until

about the hour of seven o'clock last evening, November 17, 1890, when he learned for the first time of the facts stated in the affidavit of Charles Lake, filed herewith; that defendant has every reason to believe, and does believe, that the facts stated in said affidavit of Lake are true, and that the 'runner' therein mentioned was an eye-witness to the matters and things related to said Lake, as stated in said affidavit; that if this cause shall be continued to the next term of this court, defendant has no doubt but that his attorneys and friends will be able to trace and ascertain the name and whereabouts of said runner, from the hotel register in Pontiac, where said runner put up on the day of the alleged shooting, and have him in attendance upon this trial as a witness in defendant's behalf; that he is informed and believes that runners upon the road are most generally acquainted with each other, and by taking all of the names from the hotel registers in this city for the day in question, he verily believes he will be able to ascertain the whereabouts of some of them, and that by conferring with them he will be able to trace up all of them, including said runner referred to in said Lake's affidavit; that it is reasonable to suppose, and he verily believes, that other persons yet unknown were eye-witnesses to said facts and circumstances, and now that he has attorneys to look after and manage his defense he will be able to ascertain their names, and have them present at the next term of this court to testify in his behalf; that Pontiac is a city of about 3000 inhabitants, and there are only two or three hotels of any importance in the city, and it will not be difficult to trace up the transients stopping at them on a given day; that this is the first term of court since the alleged shooting, and under the unfortunate circumstances of the case it would be most unjust and unnecessary to compel defendant to submit to trial at this time; that the materiality of said runner, and of other witnesses defendant believes he will be able to produce by the next term of court, consists in this: that it will show that Hodge vio-

lently assaulted affiant in such manner as to cause a reason-
able man to believe that his life was in danger; that affiant
knows of no other witness or witnesses by whom he can prove
said facts; that it is wrongfully and mistakenly claimed by
the People, based upon the testimony of some witness or wit-
nesses, as defendant is informed and believes, that affiant was
the aggressor, and fired the alleged shot or shots without
provocation and under circumstances not called for in his nec-
essary self-defense, and it is therefore indispensable to justice
and defendant's defense that he should have the testimony of
said runner, and others whom he believes he will be able to
discover by the next term of this court; that defendant's want
of readiness for trial is not through any fraud, collusion or
procurement, but he has good reason to believe, and does be-
lieve, that he will be able to find said runner and others to
establish the facts set up in the affidavit of said Lake, and have
them present at the next term of this court; that since said
affidavit of November 6, 1890, his friends have furnished him
with some money for his counsel, and to pay necessary ex-
penses of hunting up and procuring the attendance of such
material witnesses as he believes he will be able to discover
by the next term of court, and he knows of no reason why he
may not be fully ready for trial at that time; that defendant
is entirely ignorant of court proceedings, and being delayed
and disappointed in the procurement of counsel, as shown in
said affidavit of November 6, 1890, he was prevented from
having anything done in the preparation of his defense until
said 7th day of the present month, when Strawn & Norton
were appointed to defend him; that, imprisoned as he was,
he could hear or learn but little of what was claimed against
him as to the facts and circumstances of the case, and being
entirely unacquainted with such matters he did not know what
to do, and bent all his efforts to have his friends raise money
to employ counsel, but was not able to do so in time for this
court; (defendant makes affidavit of C. C. Strawn, filed No-

vember 7, 1890, part of this affidavit by reference;) that he is informed and believes that the matters concerning which said runner and other witnesses will testify are material, and that there will be a conflict of testimony thereon, and that the testimony of said witnesses will be absolutely necessary to establish a reasonable doubt in the minds of the jury of his guilt in the premises; that said runner, and other persons expected to be procured by next term of court, are not absent by the permission or consent of defendant; that he expects to procure their testimony by the next term of court, and that this application is not made for delay, but that justice may be done."

Charles Lake deposes that "he is a painter by trade, and has resided in Pontiac for the past twenty-nine years'; that since the alleged shooting, and he thinks it was the next day after, he was going on a Wabash train from Pontiac to Saunemin, where he was doing a job of painting for Holdridge, and that in said train he got into conversation with a man whom he understood to be a runner for a wholesale house, and that the shooting of Hodge came up, and said runner told him that he saw the whole thing from the west end of the porch of the Smith House, where he was standing at the time, and that he did not think North was to blame in the matter, because the policeman (meaning Hodge) rushed upon him in a violent and threatening manner and demanded that he give him his revolver, which North refused to do, and started to go away toward the north, and thereupon the policeman followed him, and violently seized him with one hand and commenced beating him over the head with a club, or policeman's "billy," which he held in the other hand, and then a scuffle ensued between the two men, and in the scuffle (Hodge still beating him with the club) North went down, and he heard shots fired after the scuffle commenced, but could not tell which of the men fired the shots, and that North seemed very much intoxicated; that said runner had a brown mustache, and he thinks

he would be able to identify him, and he inferred from the conversation that said man was a runner for a Chicago wholesale house; that he got out of the train at Forrest and ate a lunch at the counter at the station, and affiant understood from him that he was then on his way to Chicago; that affiant made the foregoing facts known to Mr. C. C. Strawn for the first time about half-past six o'clock last evening, November 17, 1890."

Strawn deposes that "he is of counsel appointed to defend accused November 7, 1890; that since said appointment of the firm of Strawn & Norton they have put forth every effort in their power to be ready for trial at this time, consistent with their duties to other clients having causes in this term of court; that on Monday, November 10, 1890, the case of *Heisner* v. *Illinois Central Railroad Co.*, involving very complicated questions of law and fact under the drainage laws, came on for trial, and was submitted to the jury at the adjournment of court on the following Thursday evening, the jury returning a verdict the next morning, and Strawn & Norton conducted the defense for said company, and the cause was very hotly contested, and during the trial thereof they were wholly unable to give any substantial attention to the case of the defendant, North, in this indictment; that on Friday, November 14, 1890, after the verdict in said railroad case, the case of *Filbert* v. *Lynch et al.*, under the Dram-shop act, for loss of support by the drunkenness of her father, came on for trial, and Strawn & Norton were of counsel for defendants in that suit, which continued until the forenoon of the next day, Saturday, November 15, 1890; that the engagements of Strawn & Norton in said causes were long prior to the present term of this court and their appointment to defend accused in this indictment, and they were the only counsel for the company in said railroad case, and they could not put those cases aside for this cause; that in the limited time allotted to them, under the circumstances, to inquire into the law and facts and

circumstances of this case, they have found that there are several very close and vital questions of law and fact, and the charge being a capital one, they are not prepared to properly conduct the defense at this term, and could not do the defendant justice for want of sufficient time to become acquainted with said law and facts, and considering the fatal result that may befall the defendant by reason of such want of necessary preparation, affiant, in behalf of his said firm, must beg of this court to be relieved of the responsibilities of the case, unless further and sufficient time for said necessary preparations be granted; that Charles Lake informed affiant of the facts set forth in his affidavit filed herewith, for the first time last evening, November 17, 1890, about half-past six o'clock, and affiant immediately communicated such facts to defendant; that he and his partner (Norton) have worked as diligently as the circumstances above related would permit, to be ready for this trial, but have been unable to do so, and affiant states that this application is not made for delay, but that justice may be done."

The court overruled the motion, and North excepted.

Although it was the duty of Strawn & Norton to act as counsel for North and conduct his defense, after they were appointed for that purpose by the court, they were not required, nor would they have been allowed, to neglect the business of clients by whom they had been previously retained, in order that they might do so. The trials named in the affidavit of Strawn left but a brief period before the day this case was set down for trial to be devoted to this case, and we can not say that we know, contrary to the allegations of this affidavit, that it was sufficient, under all the circumstances disclosed by the affidavits, to enable them to fully present for their client his defense under the law, and thus prevent injustice being done him by the verdict of the jury. It is provided by our statute that "every person charged with crime shall be allowed counsel, and when he shall state, upon oath, that he is unable to pro-

cure counsel, the court shall assign him competent counsel, who shall conduct his defense." (Rev. Stat. 1874, p. 410, sec. 422, chap. 38.) We are not to assume that this was intended to be a mere empty formality, and that the counsel thus appointed should be compelled to act without being allowed reasonable time within which to understand the case and prepare the defense. (*State* v. *Ferris,* 16 La. Ann. 425; *State* v. *Simpson,* 38 id. 23.) We are not unmindful of the previous conditional employment by North of the same counsel, but they were not required to take any steps in the case until North complied with the conditions of their employment by securing the stipulated fee, which by reason of his poverty he was unable to do, and the affidavits show that they did' nothing under that employment beyond appearing when North was arraigned and having the plea of not guilty entered, and thereafter entering motions for continuance of the case and preparing and presenting affidavits in support thereof.

The materiality of the evidence disclosed by the affidavit of Lake is beyond question, for whether Hodge was justified in arresting North or not, it is clear that he was not justified in beating him over the head with a policeman's "billy" merely because North refused to halt and surrender his pistol. If Hodge assaulted and beat North over the head with his policeman's "billy" before North fired the pistol, evidence thereof would tend not only to reduce the homicide from murder to manslaughter, but also to prove that North fired the fatal shot in his necessary self-defense, though it would not necessarily be conclusive for either purpose.

The objection that it is not stated that there is no other witness by whom the same fact can be proved is not tenable, since it is shown that the question of whether Hodge assaulted North and beat him with a "billy" before North shot, is one about which there will be controversy in the evidence, and so the absent evidence might alone raise a reasonable doubt in behalf of North on that question. While the affidavit does

not directly say that the facts proposed to be proved by the absent witness are true, we think that the allegations of the affidavit that "though affiant was much intoxicated at the time, * * * he believes that Hodge came upon him in a very threatening manner and demanded defendant's revolver, and that he refused to deliver it to him, and defendant then tried to go away from him, but Hodge followed him up and struck him several blows on the head with a club, or some other heavy weapon, and so dazed and stunned him that he has little or no knowledge of what subsequently occurred, except as he has it from hearsay," meet the requirements of the law in this respect. They show that, in his belief, the facts are, in substance, as it is said the absent witness will testify.

It is impossible to discover any negligence in North in not sooner having ascertained the existence of this witness, and it appears that after the information in regard to such witness was communicated to him there was not time for his attorneys to find the witness. It has never been regarded necessary for the defendant to show the same degree of promptness and diligence in preparing for trial at the term at which the indictment is returned, as at subsequent terms.

We think it was error to overrule the motion for a continuance, and that for that error the judgment below should be reversed and a new trial had.

A number of questions have been discussed in argument which may again arise upon a trial of the case, and which should therefore be passed upon now.

Upon being put upon his trial, North challenged the array of petit jurors, upon the grounds, first, that the jurors presented were not drawn for that (the sixth) week, but were drawn for the third week of the term; second, that the jurors presented were not the same as those contained in the list presented to him upon his arraignment; and third, that the jurors presented were not drawn in the manner required by law. Neither of these objections is, in our opinion, tenable.

One panel of jurors was summoned to appear and serve for the first two weeks of the term, and another panel was summoned to appear and serve for the second two weeks of the term.    On the convening of court on the 14th of October, an order thereof was entered of record dispensing with the services of the jury until the 5th of November, at which time the jury summoned to appear and serve the first two weeks of the term was ordered to appear and serve for two weeks; and by a like order the jury summoned to appear and serve for the second two weeks of the term were ordered to appear and serve for the two weeks commencing on the 17th of November.    When North was arraigned, on the 23d of October, he was furnished with the list of jurors summoned to serve for the first two weeks of the term, and this was entirely proper, for at that time it could not be known that he would not be tried during the service of that jury.    When he was finally put upon his trial this jury had served the term for which it had been selected, and it had been discharged.    The jury then called into the box was that which had been selected for the second two weeks of the term, with the exception of one man, who had served on the first jury, and who was added to the panel to fill the place of an absentee.    North was furnished with a list of these jurors before any were called for the trial of his case.

The statute only requires a list of jurors to be furnished previous to arraignment, and this can, manifestly, only mean the list of jurors then selected to serve immediately after arraignment, otherwise, in cases of continuance, it would be impossible to comply with it.    It can never be known with absolute certainty who will constitute the entire jury, at a future day, until that day shall arrive, for some of those selected may be prevented from being present by death, sickness, or other inevitable casualty.    When the time arrives for the service of particular persons as jurors, and some are absent, their places may be filled by others, as provided by section 12, chapter 78, of the Revised Statutes of 1874, page 632, and no

reason is perceived why a person who has previously served during the same term may not be selected for that purpose, as was here done. When the prisoner is ready for trial he will be furnished by the clerk with a list of the jurors then selected, if he shall request it.

Evidence was admitted on the trial, over the objection of North, that Hodge was acting as city marshal of Pontiac at the time he was shot, and it is contended this was error, because there was no allegation in the indictment to that effect. The indictment is for murder, and in such indictment it is only necessary to allege the killing of a human being in the peace of the people. (Rev. Stat. 1874, chap. 38, sec. 140, p. 374.) The official character of the person killed does not aggravate or modify the crime, and it only becomes pertinent incidentally, in determining the legal relations and duties of the person killing and the person killed, with respect to each other, and thus characterizing their acts at the time of the killing. The objection is expressly passed upon and held untenable in *Boyd* v. *State*, 17 Ga. 194, and *Wright* v. *State*, 18 id. 383. See, also, 2 Bishop on Crim. Proc. sec. 511.

It is again objected, that the court stopped the counsel making the closing address to the jury on behalf of North, and permitted the People to give in evidence an ordinance of the city of Pontiac, creating the office of city marshal. It does not appear that North's counsel were denied the right to then introduce any countervailing evidence, or that they were limited in their argument thereafter to the jury, in respect to the effect of such evidence. We are not prepared, under the circumstances, to hold there was any abuse of discretion by the court in admitting this evidence. There was, moreover, already evidence before the jury that Hodge was appointed city marshal, and was acting as such at the time.

While it is true, as contended by counsel, that there can not be a *de facto* officer where there is not an office *de jure*, yet that can have no application here, because the statute

authorizes cities to create the office of city marshal, and to provide for filling it, by election or appointment. (Rev. Stat. 1874, art. 6, sec. 2, chap. 24, p. 224.) And the maxim is, "everything is presumed to be rightfully and duly performed until the contrary is shown," and hence it is held that a man acting in a public capacity is presumed to be duly authorized so to do. 1 Wharton on Crim. Law, (7th ed.) sec. 713. "And it is not material how the question arises,—whether in a civil or criminal case,—nor whether the officer is or is not a party to the record, unless, being plaintiff, he unnecessarily avers title to the office." 1 Greenleaf on Evidence, sec. 92.

There may be other exceptions, but they are not relevant here. The rule, as applicable to the facts here, is as thus stated, and it has been recognized and acted upon by common law courts for many years. Leach on Crown Law, 515; 1 East's P. C. 315; 2 Wharton on Crim. Law, (7th ed.) 1041; 1 Phillips on Evidence, (Cowen, Hill & Edwards' notes,) 592; *Jacobs* v. *United States,* 1 Brock. 520. Of course, a person can not, by claiming to act as an officer which can have no existence under the law, create such an office; but where there is, as here, power to create and fill a particular office, evidence that a person acted as such officer is, in cases like the present, conclusive, as well of the creation of the office as of the election or appointment of the person to fill it. The introduction of the ordinance in evidence, therefore, could, beyond the temporary disturbance of counsel, have done no harm, since it tended to prove nothing which was not already sufficiently proved.

It is objected that the court permitted the preliminary evidence of the dying declarations of Hodge, which was directed to the court, to be heard by the jury; but since, when dying declarations are admitted in evidence, this preliminary evidence must also then be given to the jury, (*Starkey* v. *The People,* 17 Ill. 23,) if the dying declarations were properly admitted in evidence, it is impossible that this ruling could have

done any harm.   Had the dying declarations been held inadmissible, then the jury might have been improperly affected by the preliminary proof, and to avoid the possibility of that, it is held the jury should always be withdrawn before the preliminary proof is introduced.   *Starkey* v. *The People, supra.*

It is questioned that the preliminary proof was sufficient to authorize these declarations to be admitted in evidence. Though we think the proof barely sufficient, still we do think it sufficient.   The circumstances that the State's attorney was present, while no one representing North was present, and that Hodge's declarations consist largely, if not entirely, of answers made to his questions; that Hodge died within an hour of the time they were made, and whatever of contradiction or of obscurity of meaning there may be in them go to their effect— the diminution of the weight and importance which should be given to them by the jury, rather than to their admissibility. *Commonwealth* v. *Casey,* 11 Cush. 417; *Murphy* v. *The People,* 37 Ill. 447.

We do not think it was a proper inquiry, as it is insisted by counsel that it was, whether it is a tenet of the church to which Hodge belonged that there may be repentance at any moment before death.   It is true, in *Starkey* v. *The People, supra,* the court use this language: "Dying declarations are, therefore, such as are made by the party relating to the facts of the injury of which he afterwards dies, under the fixed belief and moral conviction that his death is impending and certain to follow almost immediately, without opportunity for repentance, and in the absence of all hope of avoidance,— when he has despaired of life, and looks to death as inevitable and at hand."   But the last clause of this sentence is only a repetition, in different and more concise language, of the idea expressed in the first clause.   The requirement in the first clause, that the evidence shall show that the person has despaired of life, and looks to death as inevitable and at hand, necessarily precludes the idea of belief that there will certainly

be duration of life during a definite after-period, within which there can be repentance for falsehood presently uttered.

To render a dying declaration admissible in evidence it is not enough that the party shall think that he shall never recover,—the declaration must be made under the impression of almost immediate dissolution. (*Rex* v. *Van Butchell*, 3 C. & P. 629; 14 Eng. Com. Law, 495.) The material inquiry therefore is, not what the church of which the party was a member teaches in regard to repentance, but what he was justified in believing, and did believe, in regard to the certainty and nearness of death.

There were certain parts of the declarations, however, which ought not to have been read to the jury. The rule is, that such declarations are only admissible in evidence where the death of the deceased is the subject of the charge, and the circumstances of the death are the subject of the dying declarations. (Roscoe on Crim. Evidence, 28; *Mead's case*, 2 B. & C. 600.) The statements, here, that the deceased had carried a warrant, at a former time, for North, and what Kay had told him in regard to seeing North have a pistol, clearly fall without the rule.

Objection is urged that the court improperly excluded evidence of a conversation between Ament and North, tending to show the condition of North's mind. We do not think it necessary to discuss this question. The evidence is claimed to be admissible as a part of the *res gestæ*. We do not think it can properly be so held. It was too long after the occurrence resulting in Hodge's death, and was, in no correct sense, a part of the transaction, or a contemporaneous explanation of it.

The arrest, or attempted arrest, here, was without a warrant. It is provided by section 4, division 6, of the Criminal Code, that "an arrest may be made by an officer or by a private person without warrant, for a criminal offense committed or attempted in his presence, and by an officer when a criminal offense has been in fact committed, and he has

reasonable ground for believing that the person to be arrested has committed it." The seventh section of the same division is, that "when an arrest is made without a warrant, either by an officer or a private person, the person arrested shall, without unnecessary delay, be taken before the nearest magistrate in the county, who will hear the case for examination, and the prisoner shall be dealt with as in cases of arrests upon warrant."

Question is made whether so much of section 4, *supra,* as authorizes an arrest without a warrant is in violation of section 6 of article 2 of the constitution, which provides that "no warrant shall issue without probable cause, supported by affidavit, particularly describing the place to be searched and the person or thing to be seized." But this has application only to warrants. It does not abridge the right to arrest without warrant, in cases where such arrest could be lawfully made at common law before the adoption of the present constitution.

Section 2 of the same article of the constitution provides, "no person shall be deprived of life, liberty or property without due process of law," and, under like restrictions in the constitution, it has been held in some States that arrests shall not be made without a warrant except for felonies, and for breaches of the peace committed in the presence of the officer arresting, (*Pinkerton* v. *Verberg,* 78 Mich. 573, *In re May,* 41 id. 299, *State* v. *Hunter,* 106 N. C. 796,) while in other States it seems to have been held, under the same constitutional restrictions, that arrests may be made for misdemeanors, generally, committed in the presence of the officer making the arrest. *White* v. *Kent,* 11 Ohio St. 550; *Thompson* v. *State,* 30 Ga. 430. See, also, 1 Am. and Eng. Ency. of Law, and cases cited in note 1, on page 734.

Without deeming it necessary to indicate what we would hold in regard to the constitutionality of an act authorizing an arrest for a misdemeanor committed in the presence of an officer, where there would be no danger of the escape of the

offender or the continuance of the offense if an arrest were not presently made, we have no hesitation in saying that it is within the principles of the common law in force in this State at and before the adoption of this provision of the constitution, to allow arrests to be made by sheriffs, constables and other like officers, for such misdemeanors committed in their presence as can not be stopped or redressed except by immediate arrest. 2 Hawkins' P. C. chap. 13, sec. 28; 3 Wharton on Crim. Law, (7th ed.) sec. 2927.

Carrying concealed weapons is made a misdemeanor by section 56, division 1, of the Criminal Code. (Rev. Stat. 1874, p. 360.) It belongs to the class of offenses denominated "breaches of the peace," and it is obvious that unless there be power to arrest presently upon knowledge of the offense, the purpose of the statute—that of preventing bloodshed—might often be defeated. While the officer is preparing an affidavit and obtaining a warrant the offender may meet his victim and accomplish his purpose of violence. The offense is a continuing one, and the evidence here shows the possession of the revolver by North when Hodge was pursuing him and when he was arrested; and proof of threats to shoot, made before the arrest, and the shooting at the time of the arrest, tend to rebut any innocent purpose in carrying it, whatever he may have intended when he first obtained it. It may then be said, the evidence tends to prove that the offense of carrying concealed weapons was here committed in the presence of Hodge, and the offense is such that it is necessary to arrest the offender at once and without delay, to certainly prevent the apprehended dangerous consequences, (*Ballard* v. *State*, 43 Ohio St. 340,) and so it is not within any constitutional prohibition. Any question of the right of a city marshal to arrest, for examination before a judge or justice of the peace, is removed by section 2 of division 6 of the Criminal Code, (Rev. Stat. 1874, p. 400,) which expressly imposes that duty upon them.

But it is further objected, that even if Hodge had the right to arrest, this gave him no right to search for concealed weapons. The guaranty of the constitution in regard to search warrants applies only to cases where the purpose of obtaining the warrant is to make a search for goods. It has no application to arrests for particular offenses consisting wholly or in part in having particular property in possession, nor to the seizure of dangerous weapons in the possession of the party arrested. In such cases the right of seizure is incidental to the right to arrest. *Spalding* v. *Preston*, 21 Vt. 9 ; *Clossom* v. *Morrison*, 47 N. H. 482.

We think there was error in giving the eighteenth and twenty-fourth instructions on behalf of the People in the form in which they were given. Our statute provides, the court, in charging the jury, shall only instruct as to the law of the case. (Rev. Stat. 1874, p. 781, sec. 51, chap. 110.) In the seventeenth instruction the jury are correctly told that voluntary intoxication is no excuse for the commission of crime. The eighteenth instruction then proceeds to state, that if certain facts were proved with regard to the intoxication of North at the time he shot Hodge, then he is guilty, notwithstanding such intoxication,—in other words, that such intoxication is voluntary. But this is but an inference. It may be an entirely correct one, but still it is but an inference of fact, which the court can not determine for the jury. The court is not at liberty to draw inferences for the jury as to the probative force of testimony. (2 Thompson on Trials, sec. 2290.) The legal effect of voluntary intoxication upon a criminal act is a question of law, but whether, in a given case, intoxication is voluntary or involuntary, is always a question of fact, and so it is not the province of the court to tell the jury that if certain facts in regard to intoxication are proved, the defendant is guilty, because this is to determine for the jury that those facts prove that the intoxication is voluntary. If it were

within the province of the court to tell the jury what inferences are to be drawn from the evidence, it would manifestly be the duty of the court to tell the jury whether the defendant is guilty or innocent.    See 2 Thompson on Trials, sec. 2290.

The twenty-fourth instruction is obnoxious to the same character of objection.    It tells the jury that if certain facts are proved, North did not act in self-defense,—purely an inference deduced from facts.    If North acted in self-defense, the legal conclusion is, he is excusable ; but what constitutes self-defense is a conclusion of fact resulting from certain evidentiary facts.

We do not find it necessary to say that we would reverse for these errors alone, in the present case.    It has, indeed, been held, in cases where the court has erred in instructions by drawing inferences of fact for the jury, and also in cases in expressing an opinion upon the weight of the evidence where we could see that such error could not have misled the jury and done harm to the defendant, that we would not reverse. But it is an erroneous mode of instructing the jury, and should be avoided, and whenever we shall feel doubtful as to its effect upon the rights of the defendant, we shall feel it to be our duty to reverse because of it.

Other objections have been urged, but they are such as are not likely to arise upon a subsequent trial, and we therefore forbear extending this already too long opinion by their discussion.

The judgment is reversed, and the cause is remanded for proceedings consistent with this opinion.

*Judgment reversed.*