SEAWELL, J., dissenting.
DEVIN, J., concurs in dissenting opinion.
Criminal prosecution on indictment charging the capital felony of rape.
On 23 March, 1943, defendant was arrested and imprisoned, charged with the rape of his stepdaughter, about 8 years of age. A term of criminal court then being in session, a bill of indictment was promptly returned by the grand jury.
The defendant being without means to employ counsel, the court, on Saturday, 27 March, 1943, assigned Hon. R. H. Sykes as counsel to represent him. The defendant was thereupon duly arraigned and entered his plea of "not guilty." (He was later permitted to withdraw this plea and enter a plea of "not guilty by reason of insanity.")
On Monday, 29 March, another term of court for the trial of criminal cases was convened with Burgwyn, Special Judge, presiding. On that day counsel for defendant appeared and moved for time in which to have defendant observed by a psychiatrist or alienist. The court thereupon directed that Doctor Owens of the State Hospital at Raleigh be summoned to come to Durham and observe the defendant. This he did, but neither the length of the observation nor the result thereof is made to appear. *Page 323 
On 31 March, 1943, the court set the case for hearing on Thursday, 1 April, at 2:30 p.m., and ordered a special venire from Orange County.
On the morning of 1 April, "to meet the ends of justice," an order was entered directing that defendant be taken to Duke Hospital for observation and examination by Doctor Lyman, a psychiatrist.
Immediately upon the call of the case for trial, counsel for the defendant filed the following written petition and motion:
"R. H. Sykes, being first duly sworn, deposes and says:
"That on Saturday, March 27, 1943, I was appointed by Judge J. J. Burney, Judge Presiding at the March Criminal Term of Durham County Superior Court, as attorney to represent Andrew Wilson Farrell.
"That said defendant is charged by Bill of Indictment of the Grand Jury of the crime of committing rape upon his own stepdaughter, eight years of age, the crime having been committed March 23, 1943.
"That promptly after my first interview with the said defendant, I was of the opinion that he was insane and unable to prepare his defense, and asked permission of the Court to have him examined by experts to determine his sanity or insanity. That such permission was allowed, and (I) immediately contacted the head of the Department of Psychiatry of Duke University to make such examination. I was informed that owing to the stress of other engagements it would be impossible to start such an examination until Thursday, April 1, 1943. That application was made to the Court for a continuance of the trial until the next term on the ground that sufficient time was not allowed for me to properly prepare the case, which involved the life or death of the prisoner. Upon disallowance of said motion for continuance, the Department of Duke University stated that they would endeavor to make the examination in time for the trial set for Thursday, April 1. The examination has not now been completed, and I have been unable to have any interview with the experts as to what their conclusions are as to the defendant's mental condition.
"That the defendant has no relatives in Durham County other than his wife and the stepchild upon whom it is charged he committed the crime; has no money or property out of which to defray the expenses of preparing the trial; that the defendant was born and raised at Hallsboro, in Columbus County, North Carolina, where his mother now resides, and she is a woman without property, whose husband is now confined to his bed with paralysis. I am informed that many of the people who have known the prisoner from his childhood would be able to testify as to his insanity, but I have not had time to confer with them, or obtain means of having them come to Durham for this purpose. Owing to the imminence of the trial, there has been no opportunity to have depositions of these people taken for use at the trial. *Page 324 
"I have given most of my time during the intervening five days to the preparation of the case, but owing to the gravity of the charge, and the severity of the punishment in case of conviction, I am of the opinion that the proper preparation cannot be made for trial at this term of Court.
"I respectfully move the Court that this case be continued for this term to be tried at a subsequent term of Criminal Court for Durham County, the next term being set for May, 1943, in order to give sufficient time for a proper preparation of the case."
The motion for continuance was denied. In respect thereto the court made the following entry:
"The Court finds as a fact that the defendant was indicted by the Grand Jury of Durham County during the week ending March 27th; that on Saturday of said week, at the time of and immediately prior to the defendant's arraignment upon the bill, counsel was assigned to him, to-wit, Honorable R. H. Sykes, and that upon his arraignment he entered a plea of not guilty and for his trial placed himself upon God and his Country; that on Monday of the following week counsel appeared before the Court and stated that he desired time in which to secure observation of the defendant by psychiatrists or alienists. Whereupon the Court directed that Doctor Owens, of the State Hospital in Raleigh, should come to Durham and observe the defendant; that on Tuesday, the said Doctor Owens, at the request of the Court, did come to Durham and did observe the defendant; that thereafter the court ordered that the defendant be taken from jail in the custody of the officers and carried to Duke University Hospital to be observed there by psychiatrists which were selected by the defendant's counsel, and that this was done on Wednesday afternoon and Thursday morning. That the Court was informed that the alienists or psychiatrists would be able to and would render their opinion in respect to the mental condition of the defendant on Thursday afternoon. On Wednesday morning it was suggested to the Court by counsel for the defendant by affidavit that he thought the proper ends of justice would be met by obtaining a jury from another county than Durham County and the Court being of the opinion that such was the case directed that a special venire of one hundred persons should be summoned from Orange County to be present in the courtroom at 2:30 on Thursday, April 1, from which panel the jury to try the case should be chosen. That this motion was submitted after the one hundred men, or such of them as had been served, had presented themselves at Court for service on the jury. In respect to any witness which this defendant may desire to have brought here from Columbus County, the Court now directs that the Sheriff of this county, or one of his deputies, shall immediately go to Columbus County with such subpoena as the defendant's *Page 325 
counsel may see proper to issue and subpoena each and every one of such witnesses as may be found in said county. And the court further directs that the County of Durham shall defray the expenses of any and all witnesses which this defendant's counsel may see fit to summons from Columbus County or any other county whom he may deem necessary to testify in respect to the mental condition, past and present, of the defendant."
Pursuant to the directions of the court, a subpoena was issued 1 April, directed to the sheriff of Columbus County commanding him to summons for defendant the witnesses named therein to appear on 2 April, at 9:30 a.m. The return of the subpoena does not show which of these witnesses were actually subpoenaed but two appeared and testified in behalf of the defendant.
During the progress of the trial the prisoner offered in evidence the unverified statement or report of Doctor Lyman, the psychiatrist, which is as follows:
"DUKE UNIVERSITY DURHAM NORTH CAROLINA
"School of Medicine Department of Neuropsychiatry Reply to undersigned.
April 1, 1943. "Judge Robert H. Sykes 410-11-12 Geer Bldg. Durham, N.C.
"Dear Judge Sykes:
"On the morning of April 1, 1943, I had an interview with Andrew Wilson Farrell in the presence of Sheriff Belvin and two other men. The impression I got from this interview and from the report made by Dr. Adams is as follows:
"In my opinion, Farrell is not lacking in sufficient intelligence to understand the nature and meaning of the crime for which he is charged.
"It is further my opinion that Farrell is aware of the social responsibility for maintaining virginity in women, except when legally married to them. He made specific statements to this effect. Although he refrained from making any clear and positive answers with respect to maintaining sexual innocence of children, his silence implied awareness of responsibility toward them as well.
"There is a bare possibility that Farrell is suffering from a disease which may rob one of `moral judgment,' namely, syphilis in the form of *Page 326 
dementia paralythica or general paralysis. He gave a history suggesting a venereal disease which may have been syphilis, he stated that he had some treatment, but the amount he indicated is not adequate to guarantee against the late development of general paralysis. This possibility seems very unlikely. He showed no tremors and speech changes. However, this disease has not been positively ruled out by my examination.
"There is only one valid argument which impressed me as feasible for his defense in the eyes of the law, as I know it: He consistently maintained that he had been drinking and that he could not remember what he did. I do not have evidence to show that he was sufficiently under the influence of alcohol to alter his responsibility at the time. I am unable to decide whether or not he had amnesia to the degree which he claimed. This latter part is hard to prove unless he announces under examination that he can recall what happened.
"I regret that my interview carries such limited value. In case you care to know some of the topics covered in my interview, I enclose a typewritten copy of my sketchy notes. They do not cover all the topics, do give most of them, do not give the exact words used, do give the sense.
Sincerely yours,
(Signed) RICHARD S. LYMAN
RICHARD S. LYMAN, M.D."
The trial was completed on 2 April. The jury having returned the verdict "Guilty of rape," judgment that the defendant suffer the penalty of death was pronounced. The defendant excepted and appealed.
Ordinarily, whether a cause shall be continued is a matter which rests in the sound discretion of the trial court and, in the absence of gross abuse, is not subject to review on appeal. S. v. Allen, 222 N.C. 145; S.v. Wellmon, 222 N.C. 215, and cases cited; S. v. Rhodes, 202 N.C. 101,161 S.E. 722. This rule is so firmly established in this and other jurisdictions as to become axiomatic. It is not debated here.
But when the motion is based on a right guaranteed by the Federal and State Constitutions, 14th Amend., U.S. Const., Art. I, sections 11 and 17, N.C. Const., the question presented is one of law and not of discretion, and the decision of the court below is reviewable.
The authority to rule a defendant to trial in a criminal prosecution attaches only after the constitutional right of confrontation has been *Page 327 
satisfied. The question is not one of guilt. Nor does it involve the merits of the defense he may be able to produce. It is whether the defendant has had an opportunity fairly to prepare his defense and present it. S. v.Whitfield, 206 N.C. 696, 175 S.E. 93. This is not a matter of discretion. The law must first say where the line of demarcation is and on which side the case falls. Constitutional rights are not to be granted or withheld in the court's discretion.
"The rule undoubtedly is, that the right of confrontation carries with it not only the right to face one's `accuser and witnesses with other testimony' (sec. 11, Bill of Rights), but also the opportunity fairly to present one's defense. S. v. Ross, 193 N.C. 25, 136 S.E. 193; S. v.Hartsfield, 188 N.C. 357, 124 S.E. 629; S. v. Garner, 203 N.C. 361,166 S.E. 180; S. v. Hightower, 187 N.C. 300, 121 S.E. 616; S. v.Hardy, 189 N.C. 799, 128 S.E. 152." S. v. Whitfield, supra; Anno. 84 A.L.R., 544; Anno. 84 L.Ed., 383.
The right to have counsel as well as the right of confrontation is guaranteed. Art. I, sec. 11, N.C. Const. Where the crime charged is a capital felony this right becomes a mandate. C. S., 4515.
The two — the right to counsel and the right of confrontation — are closely interrelated and, together, form an integral part of a fair trial. Hence, this requirement as incorporated in C. S., 4515, was not intended to be a mere formality. It does not contemplate that counsel shall "be compelled to act without being allowed reasonable time within which to understand the case and prepare for the defense." North v. People,28 N.E. 966 (Ill.).
While it is the duty of the court to see that justice is administered speedily and without delay, the trial must be in conformity to the constitutional mandates. One of these is that a defendant in a criminal case shall have counsel to represent him, Knox County Council v. State, 130 A.L.R., 1427; 1 Cooley's Const. Lim. (8th), 696; 12 Am. Jur., 307, and the right to the assistance of counsel includes the right of counsel to confer with witnesses, to consult with the accused, and to prepare his defense. Avery v. Alabama, 306 U.S. 444, 84 L.Ed., 377; North v. People,supra; People v. Cooper, 366 Ill. 113, 7 N.E.2d 882.
The duty imposed on the courts to assign counsel to defend one accused of a capital crime who is himself unable to employ counsel means more than the mere appointment of counsel. Such duty is not discharged by an assignment at such a time or under such circumstances as to preclude the giving of effective aid in the preparation and trial of the case. A reasonable time for preparation must be allowed between the time of the assignment of counsel by the court and the date of trial. Anno. 84 A.L.R., 544. "The law of the land" is "a law which hears before it condemns," and the right to be heard comprehends the right to be *Page 328 
heard through counsel who has had a fair opportunity to acquaint himself with the law and the facts of the case.
These rights — of confrontation and to counsel — are guaranteed not only by our Constitution but also by the Due Process Clause (14th Amend.) of the Federal Constitution. "Due process of law includes the right to counsel and its accustomed incidents of consultation with the prisoner and opportunity for preparation for trial and for the presentation of a proper defense at the trial." Powell v. Alabama, 287 U.S. 45,77 L.Ed., 158, and cases cited; 6 R. C. L., 453, sec. 449, Anno. 84 A.L.R., 544; Anno. 84 L.Ed., 383; 11 Am. Jur., 1106, sec. 316.
Hence, the one and only question here presented is this: Did the refusal of the trial court to grant the prisoner's motion for a continuance impinge upon his constitutional right of confrontation, in that it denied him a reasonable time within which to prepare and present his defense?
We may concede that if the only issue to be tried was that of guilt or innocence, based on the facts of the alleged offense, ample time was allowed. There could be but few material witnesses to this issue and the witnesses were local and readily available. But such is not the case. The defense here was insanity. This required investigation of the law of insanity as a defense to crime, as well as of the facts. And the investigation of the facts would include not only interviews with experts but also with relatives, friends and prospective lay witnesses.
The prisoner spent most of his life in Columbus County. There his relatives and others best acquainted with the history of his mental condition lived, more than 150 miles from Durham by automobile or bus. Travel by rail is circuitous and time-consuming. Even so, consultation with some of these was necessary before counsel could know to what extent, if any, he could press his defense.
Likewise, there are preliminary motions and orders to be made in a cause wherein the indictment charges a capital felony. Court was in session. It was the duty of counsel to be in attendance and immediately available.
It was a physical impossibility for counsel to be in attendance at court; to consult with the psychiatrist; to prepare the law; and to interview witnesses in Columbus County, all within the brief period of three and one-half days — exclusive of Sunday.
No reputable lawyer would undertake voluntarily to defend a man charged with a capital felony in which the defense of insanity was interposed without following this preparatory procedure. This was the duty of counsel here and the defendant had the right to demand reasonable time therefor.
It is true that the court, on the day the case was set for trial, directed the issuance of a subpoena for any witness in Columbus County or *Page 329 
elsewhere desired by the prisoner and made arrangement for its service. Was this subpoena issued and served? Two witnesses from Columbus County appeared and testified in behalf of the prisoner on the day the defendant was convicted and sentenced to death. Otherwise, the record proper does not answer. Even so, we would not undertake to make it appear that the prisoner has been put to a disadvantage in this respect by concealing or ignoring a known fact. The clerk of the Superior Court has certified a subpoena as a part of the record below. This shows that it was issued 1 April, commanding the sheriff of Columbus County to summons the four witnesses therein named.
It is likewise true that an examination by Doctor Lyman, a psychiatrist, was ordered. But the examination by the psychiatrist was ordered on the day the trial began and was not completed. His report so indicates, and it is so asserted without challenge. (See affidavit.)
Granted that the subpoena was issued and served and that the examination was had under the circumstances here disclosed, the requirements of the law are not fulfilled in such manner.
Nor is it enough to assume that counsel, being forced to trial, exercised his best judgment in proceeding without preparation. Neither he nor the court could say what a prompt and thoroughgoing investigation would disclose.
Assuming the mental capacity of the prisoner (a material issue upon which he has not been fully heard), he may deserve to suffer the penalty of death. There is little in this record to the contrary. But this is not the issue. Whether his defense before a jury after full preparation would have availed him is for the present purpose immaterial. The law provides one mode of trial and it is the same for the innocent and for the guilty. The fact that an accused person on the trial may be shown to be guilty is not, of itself, sufficient reason to deny him full opportunity to present, through counsel, such defense as he may have to the charge. People v.Lavendowski, 326 Ill. 173, 157 N.E. 193; People v. Kurant, 331 Ill. 470,163 N.E. 411.
It is vain to give the accused a day in court with no opportunity to prepare for it or guarantee him counsel without giving the latter any opportunity to acquaint himself with the facts or the law of the case.Commonwealth v. O'Keefe, 298 Pa., 169, 148 A. 73. "A right observed according to form, but at variance with substance, is a right denied." S.v. Whitfield, supra.
The prompt disposition of criminal cases and the vigorous administration of the criminal law are essential. Certainly this is true in respect to crimes such as the one here charged. But we must not forget that it is cases of this very nature that are most apt to cause us to fail to see with an unprejudiced eye and to judge with that singleness of *Page 330 
purpose so essential to the fair and impartial administration of the law "in the calm spirit of regulated justice." Powell v. Alabama, supra.
But it has been urged that the trial was conducted without error, and that, therefore, the verdict should not be disturbed. This we cannot concede.
The court instructed the jury in part as follows:
"Now, Gentlemen, in this case the defendant has entered a plea in respect to the alleged crime, entered a general plea of not guilty, and another plea of not guilty by reason of insanity.
"In respect to that, I charge you further that by this plea that he says he admits the act or does not deny the act but says that if he did commit the act he would not be responsible by reason of insanity."
As there is no exceptive assignment of error directed to this part of the charge, it cannot be made the basis of an order for a new trial. Nor perhaps should we discuss it at length. However, it is not amiss to direct attention thereto in answer to the argument made.
We conclude that to force this defendant to trial under the circumstances here disclosed is not due process of law and does not preserve the right of confrontation, regardless of the merits of the case. For this reason there must be a
New trial.