(No. 20140.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* FRANK NACHOWICZ, Plaintiff in Error.

*Opinion filed June 20, 1930—Rehearing denied October 14, 1930.*

ZIV, LOOMIS & SILVERTRUST, (FRED S. LOOMIS, of counsel,) for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, JOHN A. SWANSON, State's Attorney, and JAMES B. SEARCY, (EDWARD E. WILSON, and JOHN HOLMAN, of counsel,) for the People.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

Frank Nachowicz was convicted in the criminal court of Cook county of embezzlement and has sued out a writ of error to review the judgment.

The indictment consisted of three counts, the second charging embezzlement, and a *nolle* was entered as to the first and third. It is contended that the judgment should be reversed because of a fatal variance between the evidence and the indictment, which charged an embezzlement of money while the evidence shows that the property involved was checks. The abstract of the second count shows only, "Second count for embezzlement." This shows nothing in regard to the character of the property charged to have been embezzled and therefore does not present the question of variance for decision.

The principal ground relied upon for reversal is the admission in evidence, over the defendant's objection, of his testimony given in the earlier trial in the same court of the case of People *vs.* Michael Turbak. The following facts appearing in the evidence are necessary for the consideration of this objection:

It is contended by the prosecution that the alleged embezzlement was of the property of the Polish National Al-

liance, of which Michael J. Turbak was treasurer in 1927 and until about September 1, 1928. The plaintiff in error was assistant treasurer and Ann Singer was cashier. The Polish National Alliance was a fraternal beneficiary society organized under the laws of this State, having at the time of the trial 290,000 members and engaged in business in thirty-two States. Its daily business was from $5000 to $40,000, of which from $1000 to $5000 was in the form of cash, which, until deposited in bank, was kept during the day in a drawer in the treasurer's desk and at night in the safe. Its funds for investment, amounting to about $15,000,000 or $16,000,000, were invested in real estate mortgages. Insurance was required on the buildings included in the mortgages and was placed with agents or brokers, who returned to the Alliance ten per cent of the premium as a rebate. Only three of the checks for rebates which were presented in evidence on the trial were actually credited to the Alliance on its books as a part of its assets, and these only in part. These three were drawn for Engelhard, Krogman & Co. by Herbert Krogman, a member of the firm, payable to Henry Krogman, his father. Under the rules of the Board of Underwriters the payment of commissions to the Alliance was not permitted, and Engelhard, Krogman & Co. had procured a membership in the Board of Underwriters in the name of Henry Krogman in order to pay the commissions or rebates through him. The signature of Henry Krogman was indorsed on the checks, with his consent, by his son, Herbert, and the checks were sent to the plaintiff in error. Four checks drawn by Engelhard, Krogman & Co. were introduced in evidence as exhibits 16, 17, 18 and 19. Exhibit 16, dated July 28, 1927, was for $753.70, and $703.70, only, of its proceeds were credited as a part of the assets of the Alliance. Exhibit 17, dated June 26, 1928, was for $1028.02, and $928.02, only, of its proceeds were credited as a part of the assets of the Alliance. Exhibit 18, dated September 19,

1927, was for $649.97, and $549.97, only, of its proceeds were credited as a part of the assets of the Alliance. Exhibit 19, dated September 6, 1927, was for $692.20, and none of its proceeds were credited as a part of the assets of the Alliance. Other insurance was placed by the Alliance through the Great Lakes Insurance Company, which drew its check in payment of the rebate, (exhibit 20,) dated August 25, 1927, for $169.50, payable to J. J. Berek, for the Alliance. Still other insurance was placed through the Strom-Carlson Company, which drew its check dated August 25, 1927, for $95.39, payable to the Alliance. In many cases where loans were made by the Alliance it required also title guaranty insurance, which it obtained from the Lake County Title and Guaranty Company, which refunded one-tenth of the premiums to the Alliance by thirteen checks, exhibits 2A to 14A, inclusive, drawn in payment of such rebates for a total amount of $697.55. No part of the proceeds of any of the checks, except exhibits 16, 17 and 18, was credited as a part of the assets of the Alliance. All these checks bore the endorsement of the Alliance made by a rubber stamp, which was accessible to and used at various times by Turbak, the treasurer, the plaintiff in error, his assistant, and by Ann Singer, the cashier. Turbak and the plaintiff in error were brothers-in-law. In the late summer or early fall of the year 1928, Paul Birk, the bookkeeper of Engelhard, Krogman & Co., at the request of the plaintiff in error, changed exhibit 18 from $649.97 to $549.97 and exhibit 17 from $1028.02 to $928.02. This was after the checks had passed through the banks and had been returned to the maker.

Turbak, who had been indicted for the embezzlement of the same property here involved, was tried in June, 1929, and was found not guilty. In this trial the plaintiff in error testified as a witness for the defense. He did not testify on the trial of the present case but the testimony which he gave in Turbak's trial was admitted in evidence against

him, and the alleged error in its admission is the basis of a large part of the argument for reversal.

Judge Robert E. Gentzel, who presided at the trial of Turbak, and John P. Hampton and Clarence S. Piggott, assistant State's attorneys who were engaged in the trial, were the witnesses who related the testimony given by the plaintiff in error on Turbak's trial. Judge Gentzel was first examined, and after having stated that he presided at the trial and Nachowicz testified on behalf of the defendant, this question was put to him: "Can you tell the jury the substance of his testimony regarding the embezzlement or embezzlements of certain moneys from the Polish National Alliance?" This was objected to "as no proper foundation having been laid for the introduction of this testimony." Without any ruling on the objection another question was asked, "Do you recall the nature of the testimony of Frank Nachowicz during the time that he was a witness for the defendant, Michael Turbak?" This was objected to "as being immaterial, incompetent and irrelevant as to the nature of what the testimony was." The objection was overruled, and the witness having answered, "I do," was asked to state what the testimony was. Counsel for the defendant then stated: "No foundation as to what the testimony was—nothing shown on behalf of this witness as to just what the testimony was." The bill of exceptions stated that there was some discussion out of the hearing of the jury but does not set out the discussion or what it was about, and the witness continued, saying that certain checks and exhibits were introduced in evidence for the State during Turbak's trial and that Nachowicz testified with regard to them. To the question, "Can you give us the testimony of Nachowicz in that respect?" the defendant's counsel said, "Same objection," and the court, "Overruled." The witness answered, "My recollection is that the embezzlement case tried before me turned upon two points," and the court sustained the objection because the answer

was not responsive. The witness said: "The testimony of this defendant was to the effect—the only way that I could put it—that the money that was extracted by him from the treasury or from the cash drawer of the Polish National Alliance was a part of the commissions for insurance received by them and through the checks that were obtained from some abstract company, as I recall it, which checks he appropriated to his own use." After another question and answer, to which objection was sustained, the witness continued, as stated in the abstract: "He said that he took part of the moneys out of the cash drawer and converted them to his own use out of the funds that were received by the Polish National Alliance for insurance commissions. He said that Turbak had nothing to do with it; that he gave the figures to Turbak, who made the memorandum on a slip and gave the slip to the book-keeper to make entries on the book. Looking at State's exhibit 18 [after several questions] I recall his testimony, and the only recollection that I have is that there was a change of $100. It was reduced at the request of this defendant and then placed back, as I recall, to the original amount by the maker of the check or his auditor. The witness Nachowicz testified that he was a brother-in-law of Turbak." On cross-examination Judge Gentzel testified that he recalled that the witness took the position that "he claimed that he had earned this money; that they were commissions coming to him and not to the P. N. A. business, excepting the $100 which I say he stated he took. Referring to the $100 taken out of the check for $1028, he said he took the $100 out of the cash drawer and that he made the entry on the book for $928, and said he claimed it." The witness did not recall Nachowicz's language but thought that it was as commissions due him. After saying that he tried on the average one case a day and it was rather difficult to remember the testimony of all these cases, he was asked, "Do you remember, on the testimony of this witness, whether he

made any objection to answering the questions on the ground that his testimony might tend or might incriminate him?" and answered, "I think he did." The following questions were asked and answers made:

Q. "Do you remember the exact words said at that time?

A. "No.

Q. "But before he testified to these facts he made the objection that his testimony might tend to incriminate him, and you overruled his objection, did you not?

A. "Yes.

Q. "And ordered him to answer?

A. "I did."

On re-direct examination by the State's attorney the question was put: "Judge, before you ordered this witness, Nachowicz, to answer certain questions, had he testified on direct examination regarding certain checks and certain amounts and the manner in which they had been entered on the books?" He answered, "Yes." The testimony of Hampton and Piggott was similar to that of Judge Gentzel.

The voluntary testimony of a witness in the trial of an indictment against another person, although it may contain admissions of facts tending to show the witness guilty of a crime, does not ordinarily come within the rules which are applicable to the admission in evidence of confessions and which require a preliminary examination of the witness by the court, out of the presence of the jury, in regard to the voluntary character of the statements. A confession of a defendant to which no objection is made is properly admitted in evidence without any preliminary proof. Confessions are competent evidence, however, only when they are voluntarily made, and if objection is made that a confession was not voluntary it is the duty of the court to hear, out of the presence of the jury, such evidence as either side may present as to the circumstances under which the confession was made and to determine the preliminary

question of its admissibility in evidence. (*People* v. *Costello,* 320 Ill. 79; *People* v. *Fox,* 319 id. 606; *People* v. *Sweeney,* 304 id. 502.) It is said by Greenleaf that in our law the term "admission" is usually applied to civil transactions and to those matters of fact in criminal cases which do not involve criminal intent, the term "confession" being generally restricted to acknowledgments of guilt, and therefore he treats them separately. The testimony of the plaintiff in error on Turbak's trial was not offered as a confession but merely as the admission of a fact not involving a criminal intent. It did not purport to be an admission of guilt. In fact, far from admitting guilt the witness claimed that the money taken belonged to him, that it was his commission for placing the insurance and that he had a right to take it.

Voluntary statements of fact which do not tend to establish the guilt of the person making them of a crime but are exculpatory of him, are competent evidence against him as admissions of a party. Statements and declarations by a defendant in a criminal case in denial of guilt while a witness before a grand jury are not confessions within the rule requiring them first to be shown to have been made voluntarily before they are competent evidence against him. The fact that his testimony before the grand jury was in obedience to a subpœna does not render his statements or declarations involuntary. His rights are protected by his privilege to refuse to answer when the answer tends to incriminate him. Failing to exercise this privilege his statements become voluntary. (*State* v. *Campbell,* 93 Kan. 688.) A confession is an acknowledgment of guilt; a voluntary admission or declaration by a person of his agency or participation in a crime; an acknowledgment of guilt and not of facts criminating in their nature. (*Johnson* v. *People,* 197 Ill. 48.) A confession, in a legal sense, is restricted to an acknowledgment of guilt made by a person after an offense has been committed and does not apply to a mere

statement or declaration of an independent fact from which such guilt may be inferred. (*State* v. *Reinhart,* 26 Ore. 466.) The declarations of accused persons are not necessarily confessions but are generally denials of guilt and attempts to explain circumstances likely to excite suspicion. (*State* v. *Gilman,* 51 Me. 206.) A confession of guilt is an admission of the criminal act itself—not an admission of a fact or circumstance from which guilt may be inferred. *State* v. *Read,* 53 Iowa, 69; *Covington* v. *State,* 79 Ga. 687.

The questions as to what Nachowicz's testimony was regarding the embezzlement from the Polish National Alliance were objected to "as no proper foundation having been laid for the introduction of this testimony," and "as being immaterial, incompetent and irrelevant as to the nature of what the testimony was," and "no foundation as to what the testimony was—nothing shown on behalf of this witness as to just what the testimony was." These objections contain no suggestion that the testimony proposed to be introduced was a confession by the defendant of his guilt, that it was not made voluntarily, or that the defendant desired that evidence should be required on that question. The objection that no proper foundation had been laid contained no suggestion as to what foundation counsel referred to or thought should be laid. The rule is well established that testimony given by a witness in any case, proceeding or investigation may be used in any subsequent proceeding or investigation against him. (1 Bishop's New Crim. Proc.— 4th ed.—sec. 1255.) The record shows that the case of People *vs.* Turbak was pending in the criminal court of Cook county and that on the trial the plaintiff in error here testified on behalf of the defendant. The prosecution sought to prove the testimony of the plaintiff in error on that trial regarding the embezzlement of money of the Polish National Alliance. No other foundation was necessary for the testimony sought to be proved in the absence of a specific objection indicating the foundation thought to be lacking, and

no such objection was made. The objections made were properly overruled.

After the introduction of this testimony the defendant made no motion to strike it out but introduced a transcript of the examination of Nachowicz in the Turbak case, in which, among other things, appear the following questions and answers in his examination in chief:

Q. "Referring to State's exhibits 12 to 24, inclusive, being checks from the Lake County Title and Guaranty Company during the years 1927 and 1928, do you know whether or not, of your own knowledge, Michael J. Turbak received the proceeds of those checks or any part or portion thereof?

A. "He did not.

Q. "Look at the checks, exhibits 2 to 7, inclusive, are you able to state of your own knowledge whether or not Michael J. Turbak, the defendant, received the proceeds or any part or portion of those checks?

A. "He did not.

Q. "Do you know whether any commissions from the Lake County Title and Guaranty Company were ever received during this time, or prior thereto, by the Polish National Alliance as commissions?

A. "No, sir; never were."

On cross-examination by the State's attorney inquiry was made about various transactions which had been mentioned in the examination in chief and about various exhibits which had been introduced in evidence, the plaintiff in error claiming that he had an interest in all the checks for commissions paid to the Polish National Alliance, though Turbak did not know that Nachowicz had an interest in them. The bill of exceptions shows the following proceedings in the course of the cross-examination:

"He [Turbak] talked to me about it when he found out there was supposed to be a shortage. I think that was in October or November, before he was arrested. I didn't

go over any of those items. I first began to talk about the items when he was arrested. In October he asked me if there was any shortages. I said, 'None that I know of.' I mean shortages in his accounts.

Q. "Now, did you in each one of these instances abstract cash, so much from the—

Mr. Loomis: "Just a moment. I am advising that under instruction of counsel the witness refuse to answer.

The court: "Do you mean with reference to these checks?

Mr. Loomis: "All of those checks.

The court: "Overruled.

Mr. Loomis: "Hasn't he the privilege of refusing to incriminate himself?

The court: "Do you admit something wrong?

Mr. Loomis: "I don't say anything, but he has the right to refuse to answer on that ground.

The court: "Overruled.

The witness: "I refuse to answer on that ground.

The court: "On what ground?

A. "On advice of counsel."

After some further discussion the objection was overruled, the witness was directed to answer the question, and said, "Yes." The cross-examination then continued as follows:

Q. "You took the money out of the cash drawer?

A. "Yes.

Q. "What about the rest of the checks?

Mr. Loomis: "Same objection.

The court: "Overruled. I think he has answered that.

A. "I did."

The subject matter about which the plaintiff in error testified in the Turbak case was the alleged embezzlement by Turbak of the same property of the Polish National Alliance which is alleged in the present indictment to have been embezzled by the plaintiff in error. He testified to his

personal knowledge that Turbak had not received any part of that property. Three persons had access to the money and checks of the Alliance, and when a witness testified to his knowledge that a particular one of the three had not received any part of the property, the source and accuracy of his information became a proper subject for cross-examination regarding the basis of his answers.

Section 10 of article 2 of the constitution provides that no person shall be compelled in any criminal case to give evidence against himself. This constitutional privilege of silence is an absolute guaranty to every person appearing as a witness in any court in this State against being required to answer any question the answer to which will expose or tend to expose him to any penalty, fine, forfeiture or punishment, or tend to accuse him of any crime or misdemeanor, or will be evidence which will form a link in a chain of evidence to convict him of a criminal offense. (*Minters* v. *People,* 139 Ill. 363; *Lamson* v. *Boyden,* 160 id. 613; *People* v. *Spain,* 307 id. 283.) The privilege is, however, personal to the witness, and if he answers without claiming it, the privilege is waived. *Bolen* v. *People,* 184 Ill. 338; *New York Life Ins. Co.* v. *People,* 195 id. 430.

"The law presumes that a party who is called upon to testify as a mere witness knows his rights. He may decline to testify to anything that may tend to incriminate him. This the defendant could have done if he had claimed the privilege. Having failed to do so he cannot now complain." (*People* v. *Molineux,* 168 N. Y. 264.) In that case (a trial for murder) evidence was introduced against the defendant of his testimony given at the coroner's inquest pursuant to a subpœna issued by the coroner, and in holding that the evidence was properly received the court used the language quoted.

The evidence of the plaintiff in error's testimony in the Turbak case was properly received. It was privileged, but the plaintiff in error having voluntarily answered the ques-

tions asked on his examination in chief, waived his privilege and subjected himself to the right of the prosecution to a full cross-examination of him and a disclosure of the whole truth as to the matters about which he testified. (*Georgia Railway and Banking Co.* v. *Lybrend,* 99 Ga. 421.) The reason of this rule is that a witness cannot arbitrarily waive his privilege in part for the purpose of revealing only so much of the truth as will benefit one of the parties and assert it in part when interrogated as to facts which might benefit the other party. When the privilege is once waived in a trial it is completely waived for that trial and the witness becomes subject to cross-examination the same as any other witness examined in the case. (*People* v. *Cassidy,* 213 N. Y. 388; *Fitzpatrick* v. *United States,* 178 U. S. 304.) In the latter case it is said: "Where an accused party waives his constitutional privilege of silence, takes the stand in his own behalf and makes his own statement, it is clear that the prosecution has a right to cross-examine upon such statement with the same latitude as would be exercised in the case of an ordinary witness as to the circumstances connecting him with the alleged crime." That rule is, that if a witness discloses a part of a transaction or conversation tending to criminate him he waives his privilege and must answer freely and disclose the whole transaction or conversation unless the partial disclosure is made under an innocent mistake or does not clearly relate to the transaction as to which he refuses to testify. (*Ex parte Senior,* 37 Fla. 1.) If the witness consents to testify to one matter tending to criminate himself he must testify in all respects relating to that matter so far as material to the issues. If he waives the privilege he does so fully in relation to that act, but he does not thereby waive his privilege of refusing to reveal other unlawful acts wholly unconnected with the act of which he has spoken, even though they may be material to the issue. The plaintiff in error having waived his privilege by voluntarily answering the questions asked him in

chief in regard to the proceeds of the checks, no error occurred in requiring him to answer fully, on cross-examination, in regard to the disposition of the proceeds.

It is argued for the plaintiff in error that aside from the supposed confession contained in his testimony there is no proof of any embezzlement—that is, the *corpus delicti* is not proved. The deficit was clearly shown, without regard to any admission or confession of the plaintiff in error, by proof of the custom of paying rebates on the premiums on insurance policies and on charges for making abstracts and guaranty policies; the drawing of checks payable to the order of the Polish National Alliance for such payments; the mailing of the checks to the payee and the return of the canceled checks to the drawers with the indorsement of the Alliance; the alteration of the amounts of some of the checks at the request of the plaintiff in error after their payment and their appearance in the records of the Alliance in the reduced amounts, and the return of other canceled and indorsed checks which did not appear on the books of the Alliance. By this evidence the depletion of the funds of the Alliance was shown and thus the *corpus delicti* was proved. These checks, when received, would go to the treasurer's desk. Turbak was treasurer, Nachowicz his assistant, and Miss Singer cashier. Each of them had authority to use the rubber stamp on that desk for the purpose of indorsing checks and each of them did so use it. No witness was able to testify, or did testify, who made the indorsements on the checks introduced in evidence, and therefore, while the unlawful disappearance of the funds was proved, the proof that the plaintiff in error was the guilty person was not made to appear until the testimony given by the plaintiff in error on the trial of Turbak was introduced. His testimony showed that he took some of the checks and others he caused to be altered so that they would appear on the books smaller in amount, appropriating the difference himself.

While it has been held that a defendant's confession, when the *corpus delicti* is not otherwise proved, is insufficient for a conviction, this does not mean that the *corpus delicti* must be proved by the evidence, aside from the confession, beyond a reasonable doubt. On the contrary, it was early held that it is the mere naked confession, uncorroborated by any circumstance inspiring belief in its truth arising out of the conduct of the accused or otherwise, which is held insufficient to convict, and the corroborating fact or facts in proof need not necessarily, independent of the confession, tend to prove the *corpus delicti.* (*Bergen* v. *People,* 17 Ill. 426.) Direct and positive evidence is unnecessary to prove the *corpus delicti,* (*Campbell* v. *People,* 159 Ill. 9,) and it is not essential that it should be established by evidence independent of that which tends to connect the accused with its perpetration. The same evidence which tends to prove one may also tend to prove the other, so that the existence of the crime and the guilt of the defendant may stand together inseparable on one foundation of circumstantial evidence. (*Carroll* v. *People,* 136 Ill. 456.) The crime being clearly shown, independently of admissions or confessions, to have been committed by some person, the admissions or confessions freely or voluntarily made may be considered in connection with the other evidence to establish the *corpus delicti,* and it is sufficient if evidence of other facts and circumstances so fully corroborates the confession as to show the commission of the offense beyond a reasonable doubt. *Gore* v. *People,* 162 Ill. 259; *People* v. *Hein,* 315 id. 76.

The plaintiff in error, by reason of his employment and position, was enabled to receive the checks and to have access to them and to the money in the treasurer's desk. He availed himself, according to his testimony, of the opportunity to cash the checks and take the money. It is argued that the evidence does not show an intent to embezzle. His

claim, according to his testimony in Turbak's trial, was that he had an interest in all the checks for rebates that came in; that they all belonged to him according to the rules and regulations of the Board of Underwriters, but he did not discuss that matter with Turbak, and Turbak did not know that he had or claimed any interest in these checks. His claim was that the Polish National Alliance was not an insurance company; that it had no right to make an agreement with insurance companies to write insurance and get commissions, and since its charter did not give it any such right it had no legal right to that money, consequently it could not be embezzled. His counsel contend in their argument, not that if the money did not belong to the Polish National Alliance it could not be embezzled, but that as long as it was necessary for the indictment to aver the ownership of the funds or property alleged to have been embezzled it was a necessary allegation, and must have been met by proof that such party was either the actual owner of such property or funds or had an interest therein as agent, broker, factor or otherwise for others such that the funds might be embezzled, and they contend that the Polish National Alliance exceeded its corporate powers by indulging in a fire and title insurance agency or brokerage business, and that therefore it did not and could not legally have title to these funds either on its own account or as agent, factor or broker for anyone else, so that the necessary allegation that the plaintiff in error embezzled the moneys of the Polish National Alliance was not proved. If the Polish National Alliance was not authorized to collect these commissions and was exceeding its corporate powers in doing so, the only authority to question its acts of this kind was vested in the People. Certainly the funds were not derelict, to be picked up and carried off by any person who had the opportunity to do so. Against trespassers or

its own employees it had the right to retain possession of the money, and this point cannot be sustained.

Complaint is made of the refusal of certain instructions asked by the defendant. They were inconsistent with the views which have been expressed in this opinion and it was therefore not error to refuse them.

It is argued that the motion for a new trial should have been allowed because during the progress of the trial and the cross-examination of one of the witnesses for the People a juror went to sleep and slept for a time, as disclosed by the affidavits of the plaintiff in error and one of his attorneys. The affidavit of the plaintiff in error stated that he carefully watched all the proceedings, and that in the afternoon of October 14, while his counsel was cross-examining Clarence S. Piggott, a witness for the State, the affiant's attention was called to the fact that one of the jurors went to sleep and slept for quite a period during said cross-examination. The affidavit of the attorney was that he was present at the trial on October 14, that he had read the affidavit of the plaintiff in error and knew the contents thereof, and that it was true. The plaintiff in error was called to the witness stand, and in response to questions stated that he saw the juror asleep during the cross-examination of the witness but said nothing about it at the time to the court; that if he was not mistaken he spoke to his counsel about it at the time. The People offered no affidavits or testimony. If the plaintiff in error and his counsel saw that one of the jurors was asleep they waived any right to complain of it by failing to call the court's attention to it at the time.

The judgment is affirmed.              *Judgment affirmed.*