(No. 23994.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JAMES COOPER, Plaintiff in Error.

*Opinion filed April 16, 1937.*

114

IRVIN C. MOLLISON, and WILLIAM L. DAWSON, (TRUMAN K. GIBSON, JR., of counsel,) for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and A. B. DENNIS, (EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE, and BLAIR L. VARNES, of counsel,) for the People.

Mr. JUSTICE WILSON delivered the opinion of the court:

An information was filed in the county court of Cook county on April 16, 1936, against James Cooper. He was charged with disorderly conduct at a primary election held in Cook county on April 14, 1936. He was tried, found guilty and sentenced to a term of imprisonment in the county jail for one year and a fine of $100. He sued out this writ of error to review the judgment.

The substance of the information is that the defendant wilfully and unlawfully, at a primary election in Cook county, on the date mentioned, by profane swearing, vulgar language, disorderly conduct and fighting, causing a disturbance at the primary election, violated the statute. The act in question is as follows: "Whoever is disorderly at a primary shall be punished by a fine of not less than fifty dollars ($50) nor more than two hundred dollars ($200) or imprisonment in the county jail for a period of not more than one (1) year, or both such fine and imprison-

ment, in the discretion of the court. State Bar Stat. 1935, par. 460 (67), chap. 46, p. 1539; Smith-Hurd Stat. 1935, p. 1527.

The trial began on April 16, 1936, the same date the information was filed. The court informed the defendant of the nature of the charge against him. The defendant pleaded guilty, waived a jury trial and some evidence was heard. The case was continued to the following day to permit an investigation to be made to ascertain whether the defendant previously had been involved in criminal proceedings. It was found that he had not been so involved. The court appointed counsel for the defendant and additional evidence was presented.

The substance of the evidence is that about 3:30 o'clock in the afternoon of April 14, 1936, the defendant and one Manuel McCoy engaged in a fight at the entrance to an alley about fifty or seventy-five feet, and across the street, from the front of the polling place of the fourth precinct of the third ward, at 434 East Forty-third street in Chicago. McCoy testified that he was standing by the polling place with his aunt; that she was about to enter the polling place to vote; that the defendant was across the street and motioned to McCoy and when the latter crossed the street the defendant asked him if he wished to make some money. McCoy replied that he knew nothing about voting. The defendant advised McCoy to "vote Republican" and McCoy replied that his aunt was a Democrat; that as McCoy turned around the defendant stopped him with a revolver which McCoy succeeded in obtaining and that the defendant then ran. The defendant's testimony was that McCoy went into the polling place and wanted to vote in the name of "Allen Dawson;" that the defendant was standing there looking at McCoy. A judge at the primary informed McCoy that he could not vote there; that the defendant said to McCoy, "Boy, you better take it easy; it is too hot to do that." The defendant denied

that he owned the revolver which was found at the place of the fighting. The police officer stationed at the polling place testified that McCoy informed him that the defend-ant had challenged McCoy's vote. The police officer found the revolver in the possession of McCoy at the time of the fight. He then arrested the two men. There was other testimony that at the beginning of the fight between the defendant and McCoy, the former had a revolver in his right hand, but that he dropped it or it was knocked from his grasp, fell to the ground and that McCoy obtained it and put it in his own pocket.

About a month subsequent to the trial counsel for the defendant presented a motion to the court seeking to vacate the judgment and sentence. The motion was supported by four affidavits. One by the defendant recited his detention after his arrest on April 14, without being permitted to telephone to an attorney or any of his friends or to obtain witnesses; that he did not understand the meaning of the charge against him but thought it related to a violation of a municipal ordinance; that he was not guilty of the offense charged in the information, and that he was not shown to have been guilty of disorderly conduct on premises where the polling place was located and that what occurred between himself and McCoy was one hundred and fifty feet or more away from the polling place. The other affidavits recited that the altercation did not occur in the polling place, and in one it was stated that the fighting occurred three hundred feet or more away from the polling place. The motion to vacate the judgment and for a new trial was denied.

It is contended that: (1) The section of the statute upon which the information was founded is vague, indefinite and uncertain and contravenes sections 2 and 9 of article 2 of the State constitution and section 1 of the fourteenth amendment of the Federal constitution; (2) the information was unlawful, defective and failed to give the

county court jurisdiction of the subject matter of the offense charged and of the person of the defendant; (3) that the defendant was deprived of his liberty without due process of law, in that he was denied the right to obtain counsel; that he was not properly arraigned, nor furnished with a copy of the information, and that the consequences of his plea of guilty were not explained to him; (4) that the evidence did not support the allegations of the information and was insufficient to support a conviction, and (5) that the method of conducting the trial was improper.

In the view we take of the case some of the foregoing contentions will not require consideration. With respect to the contention that the statute upon which the defendant was convicted is invalid because of indefiniteness, it may be said that a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law. A criminal statute may not rest upon an uncertain foundation. (*Parks* v. *Libby-Owens-Ford Glass Co.* 360 Ill. 130; *Connally* v. *General Construction Co.* 269 U. S. 385.) The language of the statute is not the same as that contained in paragraph 142 of the Criminal Code upon disorderly conduct. (State Bar Stat. 1935, p. 1167.) The offense is merely that one who is "disorderly at a primary" is subject to the punishment provided. A wide variety of acts might be defined as disorderly, but when taken in connection with the words "election" or "primary" the term could hardly be misunderstood by men of common intelligence, or require them to guess at the meaning. The word "disorderly" is almost self-explanatory as it is ordinarily used. In a legal sense it has a well established meaning relative to the public peace and good order. (18 Corpus Juris, 1214; 3 Words & Phrases, p. 2111; Black's Law Dict. 3rd ed.) Disorderliness at a primary would be under-

stood to include fighting at or near a polling place during a primary election.

It is stated that the information did not allege the precise acts constituting a disturbance at the primary election, and it did not state how the defendant's conduct interfered with the primary election. The information, among other things, charged that the defendant caused a disturbance by fighting. It is urged that the information fails to state where the primary election was being held. An information should be as definite as the statute. (*People* v. *Fox,* 346 Ill. 374; *People* v. *Martin,* 314 id. 110.) The information states that the primary was held in Cook county. While there was no single direct statement that the primary election was held in Chicago, the proof was ample that the primary in question was being held in that city. If the defendant had shown need for more definite knowledge of the location of the offense charged he could have requested that a bill of particulars be supplied him. The insufficiency of the information as to any matter of form should be raised by a motion to quash. *People* v. *Pamilio,* 359 Ill. 609.

It is contended that upon the defendant's pleading guilty it was the duty of the court, imposed by law, to inform the defendant of the consequences of his plea of guilty before it was entered. The statute imposes such a duty upon the court. "In cases where the party pleads 'guilty' such plea shall not be entered until the court shall have fully explained to the accused the consequences of entering such plea; after which, if the party persist in pleading 'guilty' such plea shall be received and recorded, and the court shall proceed to render judgment and execution thereon, as if he had been found guilty by a jury," etc. (State Bar Stat. 1935, par. 756, p. 1254; Smith-Hurd Stat. 1935, p. 1229.) This statute is mandatory. (*People* v. *Rusk,* 348 Ill. 218; *People* v. *Moore,* 342 id. 316; *People* v. *Fulimon,* 308 id. 235.) Though the court asked the prosecuting attorney what the minimum punishment was for the offense in ques-

tion, there was no statement or admonition by the court to the defendant, and the prosecuting attorney's reply did not furnish accurate information to the defendant, even if he heard what was said. The record fails to show that the defendant was warned of the consequences of his plea, in the manner required by statute. It would be entirely possible, from the circumstances shown in evidence, for the defendant to believe that he had been arrested for the violation of a municipal ordinance, for which the punishment might not be as severe as that provided by the statute which he was alleged to have violated. The defendant did not have the benefit of counsel when he entered his plea of guilty nor until after evidence had been presented on the opening day of the trial, and the court had indicated what its finding would be. This was not such representation by counsel as the law contemplates. The court erred in failing to admonish the defendant of the consequences of his plea of guilty.

It may be assumed that on another trial the questions of the insufficiency of the arraignment, the failure to furnish the defendant with a copy of the information, his lack of opportunity to obtain counsel and to prepare for his trial will not again arise, and the contentions upon these questions do not require further consideration; nor is it necessary to pass upon the evidence.

It is urged that the county judge should have advised the defendant of his right against self-incrimination before asking him questions. While this is a personal privilege to be asserted at the time questions are asked, (*People* v. *Nachowicz,* 340 Ill. 480; *Bolen* v. *People,* 184 id. 338;) the privilege may be waived, and as the defendant may be represented by counsel upon another trial doubtless this question will not again arise.

For the error mentioned the judgment of the county court is reversed and the cause is remanded to that court for another trial.                    *Reversed and remanded.*