# Illinois Official Reports

## Supreme Court

*People v. Stevens*, 2014 IL 116300

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. MARK STEVENS, Appellant. |
| Docket No. | 116300 |
| Filed | December 18, 2014 |
| Held (*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where an aggravated-criminal-sexual-assault defendant testified at trial, the 1977 judicial modification of the older rule limiting cross-examination to the subject matter inquired into on direct permitted him to be cross-examined about a pending unrelated sexual assault charge where this served to discredit his consent defense and to test his credibility—no violation of the fifth amendment privilege against self-incrimination found. |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Nicholas Ford, Judge, presiding. |
| Judgment | Appellate court judgment affirmed. |

Counsel on
Appeal

Michael J. Pelletier, State Appellate Defender, Alan D. Goldberg, Deputy Defender, and Brett C. Zeeb, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellant.

Lisa Madigan, Attorney General, of Springfield, and Anita Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Michelle Katz, Annette Collins and Iris G. Ferosie, Assistant State's Attorneys, of counsel), for the People.

Justices

JUSTICE FREEMAN delivered the judgment of the court, with opinion.
Chief Justice Garman and Justices Thomas, Kilbride, Karmeier, Burke, and Theis concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant Mark Stevens was convicted of aggravated criminal sexual assault in the circuit court of Cook County and contended on appeal that his fifth amendment right against self-incrimination was violated when he was compelled to testify on cross-examination about a pending sexual assault charge. The appellate court rejected this argument and affirmed defendant's conviction. 2013 IL App (1st) 111075. This court allowed defendant's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. July 1, 2013). For the following reasons, we affirm the judgment of the appellate court.

¶ 2                                    BACKGROUND

¶ 3    Prior to defendant's bench trial for the sexual assault of B.P., the State filed a motion *in limine* to admit other-crimes evidence pursuant to section 115-7.3(b) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-7.3(b) (West 2012)). The motion sought to admit evidence that defendant had sexually assaulted R.G.[1] At that time, defendant had been arrested and charged with assaulting R.G., but the case had not yet proceeded to trial. The State alleged in the motion that the other-crimes evidence was relevant to show defendant's propensity to commit sexual assaults as well as to prove motive, intent, identity, the existence of a common plan or design, *modus operandi*, or lack of consent. The trial court granted the motion, finding that the evidence was relevant to show propensity, motive and identity. The court further determined that the probative value of the evidence outweighed the prejudicial value.

¶ 4    At trial, B.P. testified that defendant sexually assaulted her on October 1, 2002, when she was 13 years old. In the early evening hours on that day, B.P. was walking home alone when she heard a male voice say "come here." She ignored the voice but then heard someone running

---

[1]The motion also sought to admit evidence that defendant assaulted 17-year-old C.G. in 2003 and 17-year-old B.M. in 2007; however, that evidence was not introduced at trial.

- 2 -

toward her. Defendant grabbed her from behind and forced her into the backseat of a nearby car. Defendant got in the driver's seat and she noticed an object on his hip that appeared to be the handle of a handgun. Defendant drove the car for about an hour before exiting the car and forcing B.P. out of the car. He grabbed her by the arm and led her to the basement of an apartment building. Defendant left her alone for about 10 minutes before returning. He then led B.P. to a landing between the first and second floors of the apartment building where the sexual assault occurred. He ordered her to perform oral sex and then forced her to have vaginal and anal sex. B.P. stated that she could not stop defendant or move from under his weight. B.P. heard someone enter the apartment building, which caused defendant to stop the assault and leave the building. B.P. then exited the building and rode the bus home. When she arrived home, she told her mother about the assault and shortly thereafter went to the hospital where doctors performed a pelvic exam. Subsequently, in 2008, B.P. identified defendant as her assailant in a photographic array and a lineup.

¶ 5       On cross-examination, B.P. did not recall having told police officers on the night of the assault that defendant pointed a gun at her head, that there were two other offenders who stood guard during the attack, and that the assault occurred in an apartment unit within the building.

¶ 6       The parties stipulated that if called to testify, Dr. Monique Karaganis would testify that she examined B.P. on the date of the assault and observed a tear in B.P.'s hymen, two tears in her rectum and bloody semen in her vagina and rectum. Dr. Karaganis would also testify that her findings were consistent with the use of force or forceful intercourse. The parties further stipulated that defendant's buccal swab matched the male DNA profile obtained from B.P. during the pelvic exam.

¶ 7       Pursuant to the State's motion *in limine* to admit other-crimes evidence, the State called R.G. to testify. R.G. testified that defendant sexually assaulted her on September 3, 2008. She was 21 years old at that time. R.G. stated that on that day, she left work about 9 p.m. and was on the "L" train platform when a man approached her from behind, pointed something hard and sharp in her back and told her to go with him. Defendant threatened R.G. and directed her to a different train platform where they boarded a train. When they exited the train, defendant took her to a nearby hotel and forced her into the room. Defendant told R.G. to remove her clothes and defendant recovered a switchblade from R.G.'s clothes. He threatened her with the knife and forced her to perform oral sex. Defendant then forced R.G. to have vaginal sex and attempted to have anal sex. Defendant told R.G. that he would kill her if she told anyone about the assault. Later that night, they left the hotel room and boarded another train. Prior to exiting the train, defendant again told R.G. not to report the assault to anyone. After R.G. arrived home, she went to the hospital where doctors performed a pelvic exam. While at the hospital she spoke with two detectives and later accompanied the detectives to the hotel where the assault occurred. R.G. further stated that prior to the assault she had received strange phone calls, which she later realized were from defendant, but she had no prior knowledge of defendant and did not know how he had obtained her phone number.

¶ 8       Defendant testified on direct examination that he met B.P. on a telephone chat line about two weeks prior to October 1, 2002, and during several subsequent telephone conversations they agreed to meet for "sexual activity." According to defendant, on October 1, B.P. came to defendant's home and after she smoked marijuana, they went to an unoccupied third-floor

apartment where they engaged in consensual sexual activity. Defendant stated that he believed B.P. was 18 years old.

¶ 9 During the State's cross-examination of defendant, the assistant State's Attorney questioned defendant about R.G. Defense counsel immediately objected to any questions concerning R.G., arguing that since defendant's direct examination was limited to testimony only about B.P., any questions about R.G. exceeded the scope of direct examination. The trial judge responded,

"I don't know how you can limit it like that. You're right it's an active case but he chose to testify and part of the evidence that he's facing on a case that's currently before me is the evidence of proof of other crime[s]."

The court also stated that defendant's credibility was at issue. Defense counsel further argued "[a]nd he's got his 5th Amendment Right." The trial judge responded,

"under these circumstances, under these condition[s], his credibility, it was introduced for propensity obviously whether or not that other incident occurred or how he might explain it would be something that would be relevant in this case also."

The court then directed the assistant State's Attorney to continue her cross-examination.

¶ 10 Defendant testified on cross-examination that he first met R.G. at a bus stop and she gave him her phone number. They later met on an "L" train platform and rode the train to a hotel where they watched television, smoked marijuana and drank alcohol. According to defendant, R.G. voluntarily performed oral sex on him and she agreed to have vaginal sex.

¶ 11 In finding defendant guilty, the trial court noted the similarities between the assaults of B.P. and R.G. The court also characterized defendant's testimony as "disturbing in the extreme," and noted that "no one could look at him and listen to the way he testified and not come to the inescapable conclusion that he was lying." The court further stated that even if the other-crimes evidence regarding R.G. had not been admitted, the evidence against defendant was so strong that it was sufficient to prove defendant guilty beyond a reasonable doubt.

¶ 12 The appellate court affirmed, rejecting defendant's claim that his fifth amendment right against self-incrimination was violated when the trial court permitted him to be cross-examined about the R.G. assault. 2013 IL App (1st) 111075, ¶ 54. The court concluded that the examination was proper because it discredited defendant's testimony, was probative of his intent and motive, and impeached his claim of consent. *Id.* ¶ 55.

¶ 13 We granted defendant's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. July 1, 2013). We affirm the judgment of the appellate court.

¶ 14                                                    ANALYSIS

¶ 15 On appeal, defendant contends that his fifth amendment right against self-incrimination was violated when he was compelled to testify on cross-examination about the pending sexual assault charge involving R.G. Defendant argues that the cross-examination was improper because he did not waive his fifth amendment right with respect to the offense involving R.G. by testifying about B.P. and the cross-examination exceeded the scope of his direct examination.

¶ 16      The United States Constitution provides: "[n]o person shall be *** compelled in any criminal case to be a witness against himself." U.S. Const., amend. V.[2] The privilege has also been incorporated in the Illinois Constitution, which provides: "[n]o person shall be compelled in a criminal case to give evidence against himself." Ill. Const. 1970, art. I, § 10. The privilege against self-incrimination "is an exception to the general principle that the Government has the right to everyone's testimony." *Salinas v. Texas*, 570 U.S. ___, ___, 133 S. Ct. 2174, 2179 (2013). While the privilege prohibits compelled testimony, it does not prohibit a witness from testifying voluntarily in matters that may incriminate him. *United States v. Monia*, 317 U.S. 424, 427 (1943). The defendant who takes the stand and testifies in his own behalf in a criminal case not only offers himself as a witness in his own behalf but thereby subjects himself to legitimate cross-examination. *People v. Burris*, 49 Ill. 2d 98, 104 (1971). Although cross-examination is generally limited to the subject matter inquired into on direct examination, this rule has been modified to the extent that it is proper on cross-examination to develop all circumstances within the knowledge of the witness that explain, qualify, discredit or destroy his direct testimony, even if such examination constitutes new matter that aids the cross-examiner's case. *People v. Williams*, 66 Ill. 2d 478, 486 (1977). Additionally, "[a]ny permissible matter which affects the witness's credibility may be developed on cross-examination." *People v. Kliner*, 185 Ill. 2d 81, 130 (1998). The extent of cross-examination with respect to an appropriate subject of inquiry rests in the sound discretion of the trial court. *Burris*, 49 Ill. 2d at 104. It is only in the case of a clear abuse of such discretion resulting in manifest prejudice to the defendant that a court of review will interfere. *Id.*

¶ 17      We find that defendant's fifth amendment right against self-incrimination was not violated when the trial court allowed the State to cross-examine defendant about the R.G. assault. When defendant took the stand and testified in his own behalf he opened himself up to legitimate cross-examination. As noted above, legitimate cross-examination includes "all circumstances within the knowledge of the witness which explain, qualify, discredit or destroy his direct testimony." (Internal quotation marks omitted.) *Williams*, 66 Ill. 2d at 486. Cross-examining defendant about the R.G. assault did just that. Defendant testified on direct examination that he and B.P. met on a telephone chat line and after several conversations, B.P. came to his home where they engaged in consensual sexual activity. This testimony was in complete contrast to B.P.'s testimony wherein she stated that defendant forced her into a car, drove her to an apartment building and forced her to perform oral, vaginal and anal sex. Defendant's direct examination testimony put the issue of consent and his credibility in question. His testimony was subject to cross-examination about the R.G. assault to the extent that the cross-examination discredited his consent defense as well as his credibility. Defendant's contention that he did not waive his fifth amendment right with respect to the R.G. assault because he limited his direct examination testimony to the B.P. assault ignores this essential fact. It was the substance of defendant's direct examination testimony that made cross-examination about the R.G. assault permissible. As our Supreme Court stated long ago, a defendant "has no right to set forth to the jury all the facts which tend in his favor without laying himself open to a cross-examination upon those facts." *Fitzpatrick v. United States*, 178 U.S. 304, 315 (1900). We conclude that the cross-examination of defendant about the R.G. assault was an

[2]The fifth amendment's self-incrimination clause applies to the states through the due process clause of the fourteenth amendment. *Malloy v. Hogan*, 378 U.S. 1, 6 (1964).

- 5 -

appropriate subject of inquiry and the trial court did not abuse its discretion in permitting the exam. Accordingly, defendant was not compelled to give evidence against himself within the meaning of the fifth amendment.

¶ 18    This holding is consistent with our precedents. In *Williams*, the multiple defendants were on trial for murder, and one of the defendants who testified on direct examination limited his testimony to his whereabouts on the day of the murders. The trial court permitted the State to cross-examine the defendant about a supermarket robbery that had occurred about a week before the murders. The supermarket robbery had led to a confrontation between one of the victims and the defendant shortly before the murders, which provided a motive for the murders. We held the cross-examination was proper even though the defendant limited his direct examination testimony to the day of the murders. *Williams*, 66 Ill. 2d at 486.

¶ 19    In *People v. Provo*, 409 Ill. 63 (1951), the defendant was on trial for the murder of his wife. He testified on direct examination that he accidentally shot his wife and that he only fired one shot from the gun. The trial court permitted the defendant to be cross-examined as to a bullet hole in the wall of his home as well as his actions a week before and immediately after the crime. We held the cross-examination was proper because it would "throw light" on the essential facts referred to in his direct examination about whether he intended to kill his wife. *Id*. at 69.

¶ 20    Here, similarly, the trial court properly allowed defendant to be cross-examined about the R.G. assault despite defendant not having testified about it on direct examination because it cast doubt on his consent defense and affected his credibility.

¶ 21    Defendant relies primarily on *People v. Nachowicz*, 340 Ill. 480 (1930), and *People v. Geidras*, 338 Ill. 340 (1930). However, we find these cases distinguishable. In *Nachowicz*, the defendant's testimony, which had been given at the trial of his coworker, was subsequently admitted at the defendant's trial for embezzlement. The defendant had testified on direct examination that his coworker had not received the proceeds of certain checks. On cross-examination, the defendant refused to answer whether he himself had received the proceeds, and attempted to assert his privilege against self-incrimination. The court directed the defendant to answer and he admitted he had received the proceeds. The defendant argued on appeal that the cross-examination was improper. This court rejected the defendant's contention, finding that when "a witness discloses a part of a transaction or conversation tending to [in]criminate him he waives his privilege and must answer freely and disclose the whole transaction or conversation unless the partial disclosure is made under an innocent mistake or does not clearly relate to the transaction as to which he refuses to testify." *Nachowicz*, 340 Ill. at 493. This court further explained, "[i]f [the witness] waives the privilege he does so fully in relation to that act, but he does not thereby waive his privilege of refusing to reveal other unlawful acts wholly unconnected with the act of which he has spoken, even though they may be material to the issue." *Id*.

¶ 22    Here, defendant relies on the above-quoted language to support his contention that by testifying about B.P., he did not waive his fifth amendment right against self-incrimination with respect to the R.G. assault because it was "wholly unconnected" to the B.P. assault. However, defendant erroneously attempts to apply *Nachowicz*'s holding to an entirely different issue in a different context. The issue in *Nachowicz* concerned a witness's partial disclosure of a transaction on direct examination and whether the witness could be questioned

fully as to that same transaction on cross-examination. The court was not concerned with the issue presented in the case at bar: whether the cross-examination of defendant about the assault of R.G. was proper to discredit his consent defense and question his credibility. Defendant again ignores this critical fact that the substance of his direct examination testimony put the issue of consent and his credibility in question, which made them a proper subject of inquiry on cross-examination. We are not persuaded by defendant's reliance on *Nachowicz*.

¶ 23     In *Geidras*, the defendant and three others were on trial for robbery. The defendant testified on his own behalf and defense counsel did not question the defendant on direct examination about his relationship with a codefendant or whether he or the codefendant had ever owned or possessed a gun. The defendant was then asked on cross-examination about his relationship with the codefendant and whether he or the codefendant had a gun. We held the cross-examination was improper because the defendant had not testified about those matters on direct examination. *Geidras*, 338 Ill. at 344. We also explained that the cross-examination, along with prejudicial rebuttal evidence, was improper because its purpose and effect was to induce the jurors to believe that the defendant and the codefendant were well acquainted and had committed other robberies. *Id*.

¶ 24     Defendant fails to acknowledge that *Geidras* preceded this court's decision in *Williams* where we modified the general rule that had previously limited cross-examination to the subject matter inquired into on direct examination. As noted above, we modified the rule to the extent that "[i]t is proper on cross-examination to develop all circumstances within the knowledge of the witness which explain, qualify, discredit or destroy his direct testimony." (Internal quotation marks omitted.) *Williams*, 66 Ill. 2d at 486. As we have explained, the cross-examination of defendant about the R.G. assault was proper to discredit his consent defense and test his credibility. Unlike in *Geidras*, the cross-examination here had a proper purpose. We are not persuaded by defendant's reliance on *Geidras*.

¶ 25                                   CONCLUSION

¶ 26     We conclude that defendant's fifth amendment right against self-incrimination was not violated when the trial court allowed the State to cross-examine defendant about the R.G. assault. We affirm the judgment of the appellate court.

¶ 27     Appellate court judgment affirmed.